## WALTER L. FOTTERALL, JR. *v.* JOSEPH R. HILLEARY

[No. 32, April Term, 1940.]

336

*Decided May 23rd, 1940.*

The cause was argued before OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Jesse Slinghuff, Jr.,* and *G. Van Velsor Wolf,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellant.

*James J. Lindsay,* with whom were *Eugene Carozza* and *Charles D. Harris* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from a judgment of the Baltimore City Court in favor of the plaintiff in an action brought by Joseph R. Hilleary, the appellee, against Walter L. Fotterall, Jr., appellant, to recover compensation for injuries caused by an automobile operated by the defendant.

The single exception submitted was taken to the refusal of the trial court to direct a verdict for the defendant, and the issue tendered is whether the evidence in

the case was legally sufficient to permit a recovery. Giving due effect to the rule that in dealing with such an issue all evidence tending to support the plaintiff's claim, together with such inferences as are naturally and legitimately deducible therefrom, must be taken as true, the facts related in the following narrative are assumed to be the facts of the case.

The accident occurred on the Washington Boulevard near the Dorsey Road, in Howard County, Maryland, at about five thirty o'clock in the afternoon of January 14th, 1939. The day was clear, the weather was mild, and the road generally was dry, although here and there water from melting snow had frozen and formed icy spots on its surface. It had snowed on the day before, but snow plows had pushed the snow from the surface to the sides of the road, where it formed banks, about a foot in height, a foot or less removed from the paved surface of the road. The road at that point at the time of the accident was forty feet wide, divided into four ten-foot lanes, two southbound, two northbound, and the two sets of lanes were separated from each other by a yellow line along the center of the road.

On the day of the accident Hilleary and his wife, who lived in Washington, were returning in an automobile which he was driving to their home from a trip to New York. They left Baltimore for Washington at about four o'clock. At about a quarter after five o'clock, as they were driving south toward Washington, their automobile, either because it ran over an icy place in the road, or for some unknown cause, skidded across the road and came to rest with its rear end backed into the snowbank on the east side of the road at an angle of about forty-five degrees, with its front facing in the direction of Baltimore. Hilleary tried to get the car on the road, but the wheels "kept sliding and slipping," and he left it and started towards a garage on the west side of the road. As he started for the garage, Elliott L. Van Evera, who conducted it, came to meet him. Hilleary crossed the road and was talking to Van Evera, when an auto-

mobile driven by the defendant struck and injured him. At that time Van Evera was standing with one foot in the snowbank, and Hilleary was "right alongside of him," in fact Van Evera was holding his arm. Van Evera had told Hilleary that he had no towing truck, but told him of another garage a short distance away where he might find one. While they were talking they were facing the traffic which was going south on their side of the road. As they were standing there they saw two southbound cars travelling on the inside southbound lane pass them, and at the same time they saw Fotterall's car, also southbound, approaching over the west or outside southbound lane. Hilleary and Van Evera had taken a step or two in the direction of the garage where they expected to find a towing truck, when Fotterall's automobile ran into them and struck both Van Evera and Hilleary.

When he was struck, Hilleary's attention was momentarily attracted to the garage, and although he saw Fotterall's car when it was seventy-five or eighty feet away, he was not actually watching it when it struck him. When he last saw it, it was coming straight ahead in the traffic lane in which he was, but because there was "plenty room for automobiles to go by," and southbound automobiles had "plenty room to clear him," he did not continue to watch it. Although his hearing was good Hilleary heard no horn blown. He also said "the snow was right up to the edge of the road, was over the edge. I couldn't say how deep it was but it was about a foot deep. * * * While Mr. Van Evera was talking to me about the garage, I was looking at it and it was off the edge of the west side of the road and in the direction of Baltimore. The Washington Boulevard is a heavily traveled road, but there should be room for pedestrians going along the road. There was no reason for me to walk off the cement altogether in the snow, because we hadn't walked far at all to get a chance to walk anywhere. Mr. Van Evera walked with one foot in the snow. * * * Then you must have seen it forty feet away? A. Well, the car was coming all right. As I say, it was

coming straight. "Q. It was coming all right when it was coming forty feet away? A. Yes. Q. And straight at you? A. I didn't say straight at me. Q. How was it coming at that time? A. The car was coming straight in the lane, the traffic, we were in. * * * I couldn't say that his car was in the position that mine was when mine started to skid. I would say it was up further than where mine was when it started to skid, that is, further to Washington, so that his car had passed the place where mine was when mine had skidded."

The witness then corrected himself and said that when he last saw the defendant's car it was further to Baltimore than the place that his car had been when it started to skid. "It hadn't gotten to my car yet."

Van Evera, who was with Hilleary, testified: "While I was talking I was in the snow, Mr. Hilleary was standing on the edge of the concrete by the first ten foot lane facing traffic, north towards Baltimore. We were both facing Baltimore. Two cars passed in the center lane going south towards Washington and on the right ten foot lane, which Hilleary was standing in, there was a gray car over a small incline. You could see it about a hundred and fifty feet away. You could see up the road to the graveyard which was about a quarter of a mile away, and this gray car just kept a continuous course on the edge of the concrete practically where Hilleary was standing, a straight course, and any car in a ten foot lane don't take up ten feet. The other two cars went by, possibly three of them, and then the gray car, it got within about five feet from us, and I said, look out. I already had hold of Hilleary's arm, and I saw the front wheels lock within about five feet from me. By that time I couldn't quite get hold to get over in the snow, I was already in the snow, one foot was, and he hit Hilleary with the right light, it hit my leather breeches, spun me around and set me in the snow from here to that jury over there." He also said that when the accident happened it was "dusk" not dark, although Fotterall had his dimmer lights on, but that "you could see towards Baltimore about four or five blocks."

On cross-examination he testified: "I saw Mr. Fotterall's car as it was coming toward us, and it was down by the other garage over the incline, about 150 to 160 feet away. I watched the car coming toward us and I didn't miss a thing. Q. Did this car ever skid before it came towards you? A. Only until that there when I saw them front wheels lock at five feet, say about five feet. Q. About five feet? A. That's about all. It wasn't much more than that. * * * Q. How was this car going before it was five feet away from you? A. Headed straight. Q. Headed straight at you? A. Oh, no—well, if he had kept his same course he couldn't help but hit Hilleary, because Hilleary was right practically on the edge where the headlight would be, and the man kept his same course south on Washington Boulevard without making no effort to change his course. I could even see and I didn't move. I didn't say that I did move. Q. Neither of you moved off of the road until that car was five feet away from you, is that right? A. There wasn't no chance of moving. Q. Do you mean between the time the car was a hundred and fifty feet away and five feet away from you, there wasn't a chance of moving off of the road? A. I thought you said five feet. A pedestrian has the right of way according to them signs."

Mrs. Hilleary, who was also present, in referring to the accident, said: "Several cars had passed prior to the one that struck him but no others were around when this one car hit him. The car did not seem to stop; it just kept straight on ahead, and turned around and came back on the same side of the road. I would say it went for thirty to thirty five feet before it actually turned around and come back. The car never changed its course. * * * After the accident I had a conversation with Mr. Fotterall. I said 'How did you come to hit them'? He said 'I didn't see them.' * * * I had a further conversation with Mr. Fotterall on the way to the doctor. I think Mr. Fotterall discussed the fact that he stopped for another car, and I said 'but there wasn't any other car'."

Fotterall, testifying in his own behalf, said that when the accident occurred he was on his way from Baltimore to Washington, that when he left Baltimore he had had chains on his tires but had removed them a short time before his car struck Hilleary, that when the accident happened he was driving at forty-two or forty-three miles an hour, "straddling" the yellow line, "was one automobile in front of me, and I am not sure how many in front of him. The car which was in front of me put his tail lights on to stop, about forty feet in front of me. He was driving the same way I was, straddling the line. When he put his tail lights on I put on mine and applied my brakes as he signalled he was going to turn or something. I didn't want to hit him so I applied my brakes there gradually. I applied them and kept them on going for a few minutes and then this man seemed to slow up a lot faster. So I put them on some more and the car seemed to start skidding. The rear end seemed to go a little bit to the left and the front end towards the right side where Mr. Hilleary and Mr. Van Evera were standing or walking. I had noticed them when they were about seventy feet in front of me. It was not quite dark yet. I had on my dim lights so that I could see all right. When the car in front of me first applied its brakes and showed its red rear lights, the plaintiff and the other man were about thirty feet in front of that car and off to the side. They looked like they were walking towards Baltimore, two abreast. They were not in single file. Mr. Hilleary was on the concrete and Mr. Van Evera was off in the dirt or snow. The snow was apparently right even with the cement. Mr. Van Evera was apparently off the cement, and the other man was a couple of feet out in the road, not all the way, he was on the cement but near the edge."

He also denied that he had made the statement attributed to him by Mrs. Hilleary, and asserted that he had blown his horn.

Assuming the truth of those facts, which tend to support the appellee's right to recover, it appears that Fot-

terall, driving an automobile at forty-two or forty-three miles an hour, drove his car against two pedestrians standing on the extreme edge of his, the right-hand, side of the road, that it was light enough for him to see them had he been looking, that by his own admission he did not see them, that he was driving so near the edge of the road that one of the men whom he struck was not on the paved surface at all but in the snow at the side, and the other was only a couple of feet from the edge, that, although his course was directly towards the men, he made no effort to alter it, and did not apply his brakes until he was about five feet from them, although the whole width of the road to his left was unobstructed. The contention that these facts are legally insufficient to permit an inference that appellant was guilty of primary negligence finds no support in either reason or precedent, and, although that idea is disclaimed, apparently rests upon the fallacy that motorists have exclusive and paramount rights on the public highways of the state to which the privilege of all other travelers thereon must yield. But that is not true, the rights of motorists and pedestrians on public roads and streets are in every sense reciprocal. Because they are public roads the public is as a matter of common right entitled to use them, they are open to all who would travel thereon, from the ponderous and powerful trucks and busses to the little child, and each traveller thereon is equally bound to exercise ordinary care to avoid injuring others and to avoid injury to himself. What conduct will constitute due care necessarily varies with the circumstances of particular cases. The utility of highways depends upon their availability for general use. That they may serve their purpose consideration must be given to the manner in which travellers may use them. Because of their speed, weight, and potential capacity for harm, conveyances employed in vehicular traffic ordinarily use the middle of the road, while pedestrians use the sides, so that pedestrians must expect to find, and to watch for the approach of, vehicular travel in the middle of the road, and persons engaged

in that traffic must expect to find and be alert to discover pedestrians on the sides of the road, and where there are no sidewalks must expect to find such travellers actually in but at the sides of the road. Because of the difference in their respective capacities to cause harm to others, persons operating motor vehicles are bound to use greater diligence and caution to avoid injury to others than is required of pedestrians, *Holler v. Lowery*, 175 Md. 149, 159, 200 A. 353; *Berry on Automobiles,* secs. 336-338; *Dashiell v. Moore*, 177 Md. 657, 11 A. 2nd 640; *Mahan v. State*, 172 Md. 373, 384, 191 A. 575; *Edwards v. State*, 166 Md. 217, 222, 170 A. 761; *Mears v. McElfish*, 139 Md. 81, 83, 114 A. 701.

The contention that the appellee was guilty of contributory negligence as a matter of law is equally without merit. When he was struck he was where he had a right to be. He was standing near the extreme edge of the paved road, he was obeying the warning advice of the highway officials to face the traffic, he was not required to anticipate that one operating a motor vehicle on his side of the road would run him down without warning, when there was an unobstructed space of nearly forty feet to the motorist's left, and nearly twenty feet between the appellee and the center of the road, over which the appellant could have driven without striking the appellee. There is no rule of law which required the appellee to leave the paved roadway and enter the deep snow on the side to avoid a possible accident which the appellant could have avoided by a mere touch of his steering wheel. 5 *Am. Jur. "Automobiles,"* secs. 201, 203, 449; 67 *A. L. R.* 108 *et seq.;* 17 *A. L. R.* 71; *Hall v. Albertie*, 140 Md. 673, 680, 118 A. 189. As a reasonable man he was not required to assume either that the appellant did not see him, or that, seeing him, the appellant meant to drive him off the road. The appellee saw the appellant when he was seventy or eighty feet away, and although appellant admitted to Mrs. Hilleary that he did not see Hilleary before his automobile struck him, he could have seen him had he looked ahead of him.

Under these circumstances it cannot be said that the failure of Hilleary to leave the paved roadway and go into the snow was negligence in law. *Berry on Automobiles,* sec. 408; *Huddy on Automobiles,* sec. 561; 5 *Am. Jur.* 758.

But appellant contends that since appellee's car had skidded at or near the point of the accident, he should have anticipated that appellant's car might skid also, and that he was negligent in law in failing to leave the road so as to avoid possible injury. A sufficient answer to that contention is that if the appellee's evidence is accepted, the appellant's car did not skid or swerve from its course until after it struck appellee. Defendant says that it did; he also said that he was straddling the center line of the road, while the appellee's witnesses said he was driving on the outer edge of the outer southbound lane; he said that he gave a warning signal, but appellee said that he heard none although his hearing was good. But those conflicts present issues of fact for a jury, not issues of law for a court. Neither Van Evera nor appellee saw appellant's car skid before it struck them. Hilleary did not know certainly that his own car had skidded, although he thought it might have done so, the road was not covered with ice, but the edges were slippery. It must have been apparent to Fotterall that Hilleary could not leave the road without going into the snow, and the fact that the sides of the road were slippery while the center was dry must have been as apparent to him as to Hilleary. Under those circumstances it cannot be said that Hilleary's assumption, that Fotterall would not drive so near the edge of the road as to endanger him, when the whole road to Fotterall's left was unobstructed, was so unreasonable as to characterize his conduct as negligent as a matter of law.

In support of a contrary conclusion appellant cites several Maryland cases, such as *United Rwys. & Elec. Co. v. Sherwood Bros.,* 161 Md. 304, 157 A. 280, and *Baltimore Transit Co. v. Lewis,* 174 Md. 618, 199 A. 879, which are scarcely in point. The *Sherwood* case was a cross cut collision between a truck and a trolley car,

where it appeared that the truck driver drove over a private crossing directly in front of an approaching trolley car, and in the *Lewis* case the plaintiff drove directly in front of an approaching trolley at a public crossing. In *Yockel v. Gerstadt*, 154 Md. 188, 140 A. 40, the plaintiff was one of a crowd of idle persons gathered about a burning truck. While they were watching it, as any one of normal intelligence might have anticipated, the gasoline tank exploded and he was injured. The analogy between the facts of those cases and the facts of this case is so remote that the conclusions reached in them have no possible application to the facts under consideration here.

He also cites decisions of intermediate courts of appeal in other states, but since such decisions do not finally determine the law even in the states where they are made, they need not be considered. Of the other cases cited to the same point, only one can be considered analogous. In *Dahlman v. Petrovich*, 307 Pa. 298, 161 A. 550, a creamery truck, driven up an icy, slippery, snowy hill, slid backward, partially blocking the road. While the truck driver was attempting to attach chains to the rear wheels, defendant also attempted to drive by the truck up the hlil. He drove by the rear of the truck, but could go no farther, and his automobile also slid backward and struck and injured the plaintiff. In deciding that plaintiff should have anticipated that the automobile might slide back and injure him, the court distinguished *Reisinger v. McConnell*, 265 Pa. 565, 109 A. 280, saying: "In that case plaintiff was engaged in replacing a tire on his car at the side of the road, and had his back in the direction from which defendant's car approached. Although plaintiff's body extended somewhat into the line of travel, we held his position was not the proximate cause of the injury, and he was not bound to anticipate that a driver of a passing car would negligently collide with his machine. In the present case the situation was quite different. Defendant's truck passed within a few feet of plaintiff on its way up the hill, and, because of plaintiff's own experience a few minutes be-

fore, he was bound to anticipate the Chevrolet truck might slide back and injure him. Had he been alert there was sufficient time for him to reach a place of safety." The discussion in *Dempsey v. Horton,* 337 Mo. 379, 84 S. W. 2nd 621, 626, is too much affected by local practice, and doctrines such as the "humanitarian doctrine," whatever that may be, to be of much help. That was a plaintiff's appeal, and yet, although the court stated that "since plaintiff's negligence is established by plaintiff's own testimony, he is precluded from recovery on grounds of primary negligence," nevertheless it reversed the judgment for the defendant and remanded the case for a new trial. In *Norris v. Lough,* 217 Iowa 362, 251 N. W. 646, it appeared that two automobiles were parked on opposite sides of a dirt road which was wet and slippery from melting snow, leaving a space of between ten and twelve feet between them, that the plaintiff stood in the road talking to the occupant of one of the cars, when defendant's truck approached, and as it approached the driver sounded a horn. Although he knew that the truck would pass through the narrow space, and although he had time to reach a place of safety, plaintiff elected to stay in his perilous position and was injured, when the driver of the truck was unable to control it on the slippery road and it ran into him.

The facts of those cases differ so radically from those under consideration, that their only effect is to illustrate the application of the familiar principle that if one exposes himself to a known and deadly danger which by the exercise of ordinary care he could avoid and suffers injury in consequence, his conduct exhibits that quality of reckless indifference to his own safety which justifies its characterization as negligence in law.

There was no error therefore in the refusal of appellant's demurrer prayer, which is the subject of the first and only exception submitted by the record.

Without further prolonging the opinion, for the reasons given, the judgment from which the appeal was taken will be affirmed.

*Judgment affirmed, with costs.*