## GREER *v.* KING

[No. 559, September Term, 1966.]

*Decided October 11, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, OPPENHEIMER, FINAN, JJ., and CLAPP, J., Associate
Judge of the Sixth Judicial Circuit, specially assigned.

*George D. Solter* for appellant.

*Nat W. Hopper,* wiht whom were *Wray & Serio* on the brief,
for appellee.

OPPENHEIMER, J., delivered the majority opinion of the
Court. HORNEY, J., dissents.

A hitchhiker standing at night on a paved roadway in open
country, near the edge of the road, was hit by a motorist. The
jury gave a verdict for the injured pedestrian but the trial court
granted the driver's motion for judgment n.o.v. This appeal is
from that judgment.

The accident ocurred in September, 1964, shortly after 1:00
A.M., on State Route 175, between 135 and 150 feet east of
the center of its intersection with State Route 170, near Oden-
ton, in Anne Arundel County. The two State Routes intersect
at right angles; there is a traffic light overhead which was in
operation at the time of the accident. State Route 175 runs ap-
proximately east and west, and State Route 170 runs approxi-
mately north and south. Both roads are made of concrete with
blacktop patches and with a concrete paved shoulder on each
side and a sand or gravel shoulder beyond the concrete. Route
175 is straight in this locality and its grade is practically level.

There is a center line painted on the road surface dividing the eastbound and westbound lanes of traffic. At the point where the accident occurred, the width of the road surface from the center line to where it meets the concrete shoulder is approximately nine feet; the width of the concrete shoulder before the sand or gravel shoulder is reached is approximately three feet. The paved eastbound lane, therefore, is approximately twelve feet in width.

It was stipulated between the parties that the accident occurred outside the limits of a town or city in what is called country; it did not occur within the confines of the intersection of Routes 175 and 170 and there were no sidewalks on either side of the road. At the time of the accident, the weather was clear and the surface of the road was dry. The light illumination was poor. The speed limit at the scene of the accident was 30 miles an hour.

The appellant, Greer, testified that he had been in the Glen Burnie and Odenton areas during the preceding hours in search of friends living in the neighborhood. At the time of the accident, he was hitchhiking to Route 301. Immediately prior to the accident, he had been inside a hamburger stand on the south side of Route 175 at some distance west of the intersection. He crossed to the north side of the road and walked east through the intersection to a distance of about 135 feet east of it. When he arrived at this point, he glanced over his shoulder and saw the appellee's car approaching at a distance which he estimated to have been about 200 feet west of the intersection. He immediately crossed to the south side of the road and took up a position on the paved shoulder of the eastbound lane, generally facing north, but looking to his left in the direction from which the appellee's automobile was approaching. At this point, the appellee's car was crossing the intersection. The appellant then extended his right arm and thumb in the typical hitchhiker position as the appellee's car approached him. While so standing, expecting the driver of the car either to stop and pick him up, or to continue his course, he was struck on the left side and severely injured.

The appellant came in contact with the right front fender and headlight of the appellee's car and was thrown in the air and

to the right side of the road. He had no recollection of the car striking him. The appellant was dressed in a medium blue shirt with dark trousers, was carrying a brown paper bag and had no hat. He had no flashlight or other signaling device. There were trees and bushes beyond the gravel shoulder behind the appellant.

The appellant testified that he was standing on the three foot concrete section of the roadway just at the edge of the road. He said that the only reason he did not step back to the gravel and dirt shoulder when he saw the appellee's car coming down the road was that the gravel shoulder was muddy and he did not want to get the clay on his shoes because, if he did get a ride, he would drag the clay in somebody's car. He testified further that if he had known the appellee was going to have run over him, he would have stepped off the concrete and that he had ample time to do so while the appellee was coming through the intersection but that "there was still plenty of driving space."

In the absence of special circumstances or statutes, pedestrians using public highways which are located outside of towns and cities have a duty to watch for and expect to find approaching vehicular traffic thereon and operators of motor vehicles have a corresponding duty to watch for and expect to find pedestrians walking or standing on the sides of highways. *Lewis v. Hammond*, 247 Md. 297, 231 A. 2d 32 (1967); *Flohr v. Coleman*, 245 Md. 254, 262, 225 A. 2d 868 (1967), and cases therein cited.

The facts in this case are, for the most part, undisputed. Taking the testimony in the light most favorable to the appellant and giving him the benefit of all inferences fairly deducible therefrom, we are constrained to hold, as a matter of law, that he was negligent and that his negligence directly contributed to the accident.

Greer's own testimony is that he took and maintained a position on the concrete shoulder of the road, in the lane down which the appellee was driving, although he had seen appellee King's car approaching from the time King went through the intersection at least 135 feet away. It was nighttime, and although the weather was clear, the illumination was poor. Greer was wearing dark clothing and was standing against a back-

ground of trees and bushes. The lane down which King was driving, including the concrete shoulder, was only 12 feet wide. Greer assumed that King would either stop, as Greer hoped, to pick him up, or "go on by." Greer could easily have stepped back to the gravel shoulder immediately behind him and so avoided the accident, but he remained on the concrete and deliberately took the chance that King would see him in time to avoid hitting him. On the undisputed facts, we find that Greer's conduct fell short of the standard to which a reasonable man should conform in order to protect himself from harm.

In *Vokroy, Adm'r v. Johnson,* 233 Md. 269, 196 A. 2d 451 (1964), the plaintiff's decedent was struck by the defendant's vehicle while the decedent was standing by a disabled car on a highway, at night, in open country, in the lane down which the defendant was driving with his lights shining. The lower court granted the defendant's motion for a directed verdict. This Court affirmed the judgment, on the ground that the decedent was contributorily negligent as a matter of law. Judge Marbury, for the Court, said at 233 Md. 273:

> "Vokroy knew, or should have realized, he was at best in a dangerous position standing at his car, as he was, on the highway. His knowledge of the presence of an approaching car, with the lights shining, was as great or greater than Johnson's knowledge of the location and details concerning the stalled car and the attendant people cloaked in the darkness."

In *Domeski v. Atlantic Refining Co.,* 202 Md. 562, 97 A. 2d 313 (1953), the Court affirmed a directed verdict against the plaintiff-pedestrian on the ground that the pedestrian was contributorily negligent in not avoiding an oncoming car which he saw or should have seen when he ventured into a place of danger and when he could easily have remained in a place of safety. In *Martin v. Sweeney,* 207 Md. 543, 548, 114 A. 2d 825 (1955), a directed judgment for the defendant was affirmed because the plaintiff was held contributorily negligent in not leaving a disabled vehicle in which she was a passenger and which was parked the wrong way in the fast lane of traffic, when she had ample opportunity to do so. *Domeski* was a crossing case and the facts

in *Martin* differed from those here presented, but the standard of due care to be observed by a plaintiff in remaining in or seeking an easily accessible place of safety in the face of obvious danger is applicable to the situation here presented. See 4 Blashfield, *Automobile Laws and Practices* § 143.6 (1965).

In *Domeski,* Judge Delaplaine said for the Court, at 202 Md. 567:

> "It is well established that where a pedestrian suddenly steps into the path of an approaching car, and he either does not look to see if any car is approaching or makes no effort to avoid it by stopping or stepping aside, although he could easily have seen it in time to have kept or taken a position of safety and thus avoided the accident, he is guilty of contributory negligence as a matter of law, precluding recovery for resulting injuries."

In *Martin,* the rule was set forth for the Court by Judge Hammond (later Chief Judge), in 207 Md. at 548, as follows:

> "Conversely, where one who remains in a place of danger with time and the physical ability to leave, and is harmed, the courts have often held such failure to act to be contributory negligence as a matter of law."

See also Restatement (Second), *Torts,* § 466.

In the present case, it is not a question of whether Greer, in the exercise of care, should have seen King's car approaching. Greer saw the vehicle coming down the lane in which he was standing but nevertheless took and maintained his position on the concrete portion of the roadway, although, by his own testimony, he only had to step back one or two feet to the gravel shoulder to be in a position of safety.

On the undisputed facts, Greer, in the exercise of due care, should have realized the danger of his position in standing in the lane of traffic, at night, dressed in dark clothing, against a dark background of trees and bushes. See *Saindon v. Lucero,* 187 F. 2d 345, 347 (10th Cir. 1951). Even though Greer was standing near the edge of the concrete, and even though he felt there was ample driving room or clearance for King's car, Greer

unreasonably exposed himself to danger in not anticipating that King, driving down a 12 foot lane, might come close to the edge and not see Greer in time to avoid striking him.

Of the cases cited by the appellant's counsel in his able brief and oral argument in support of his contention that the issue of contributory negligence as well as that of primary negligence were properly submitted to the jury, the nearest in point is *Fotterall v. Hilleary*, 178 Md. 335, 13 A. 2d 358 (1940). In that case, as in this, the plaintiff-pedestrian was on the edge of a paved highway when he was struck by the defendant's automobile which was driving down the lane in which the plaintiff was standing. The lower court refused to direct a verdict for the defendant, and this Court affirmed the judgment for the plaintiff. However, in *Fotterall*, there was banked snow a foot or less from the paved surface of the road and the accident occurred in the afternoon. Under these circumstances, the Court held that it was not negligence as a matter of law for the plaintiff not to leave the paved highway and go into the snow. In the present case, the accident took place at night and the gravel shoulder next to the concrete was unencumbered. On the facts, *Vokroy* is more apposite than *Fotterall*.

In view of our conclusion that the appellant was contributorily negligent as a matter of law, we need not determine whether the issue of primary negligence of the appellee was properly submitted to the jury.

*Judgment affirmed; costs to be paid by appellant.*