# REID, ET VIR *v.* PEGG

[No. 129, September Term, 1969.]

*Decided December 29, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SMITH and DIGGES, JJ.

*Stanley Levin* and *Robert C. Verderaime,* with whom were *A. Harold DuBois, Verderaime & DuBois* and *Walter B. Dorsey* on the brief, for appellants.

*Marvin B. Miller,* with whom were *Couch, Blackwell & Miller* and *Joseph A. Mattingly* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This case arises as a result of a collision between a motor vehicle and a pedestrian on Route 235 near Lexington Park in St. Mary's County. A jury returned verdicts totaling $21,500.00 in favor of appellants Daisy A. Reid (Mrs. Reid) and her husband, Parran Reid, the plaintiffs, against the operator of the motor vehicle, Thomas Wayne Pegg (Pegg). Judge Bowen directed entry of a judgment *n.o.v.* on the ground that there was not sufficient evidence of primary negligence and also on the ground that Mrs. Reid was guilty of contributory negligence as a matter of law. We shall sustain the ruling of Judge Bowen on the basis of Mrs. Reid's contributory negligence.

In considering a motion for a judgment *n.o.v.,* the evidence and the reasonable inferences to be drawn from it must be considered in the manner most favorable to the plaintiff. *P. Flanigan & Sons v. Childs,* 251 Md. 646, 653, 248 A. 2d 473 (1968), and cases there cited. The granting of the motion was, in effect, a granting of the earlier motion for a directed verdict. It is in that light we here consider the evidence adduced.

The accident took place on February 16, 1968, at approximately 6:30 P.M. It was dark. There was no artificial illumination at the scene of the accident. There was no testimony to indicate that weather conditions were other than clear.

Maryland Route 235 near Lexington Park at its intersection with Adams Street is a dual highway. It runs north and south with a concrete median strip between the northbound and southbound lanes. Adams Street runs east and west, coming to a dead end at Route 235, Patuxent Naval Air Station being on the other side of Route 235. Adams Street had no sidewalks at the area of the intersection. At its intersection with Adams Street, Route 235 had a shoulder said by the investigating trooper to be 15 feet in width. The paved portion of the southbound highway was 24 feet 3 inches in width with the "slow" lane first crossed by Mrs. Reid being 11 feet 6 inches in width. The undisputed testimony was that in the direction from which Pegg came Mrs. Reid had an unobstructed view for not less than 1000 feet.

Mrs. Reid walked in an easterly direction on Adams Street to Route 235. It was her intent to visit a friend at Hermansville, south of Lexington Park on Route 235. She intended to walk down the median strip since there were no sidewalks on Route 235.

Mrs. Reid's version of the accident on direct examination was:

"When I got to the highway it was a car coming and that car—I stand there until the car passed and went on down the road. Then I look both ways on the highway and I didn't see any car, so I started walking across the street to get to the concrete. And I hear a noise.

"Q. Where were you when you heard that noise in relation to the center line? A. Well, I was crossing over the white line going towards the cement and I hear a noise and I looked around again up the road. And this car was coming in a high speed. I just couldn't say how high, but I rushed to get across the street. I didn't run, I just walk fast to get across the street and I see this car sway over and hit me coming right into me, and I couldn't run. I just

couldn't get no further. I got almost to the concrete."

On cross-examination the record at one point is:

"Q. Now then, when you looked you didn't see any lights from automobiles coming from your left? A. Wasn't no cars going."

At the trial Mrs. Reid drew a diagram indicating that her crossing of the highway was in what might be described as the bed or an extension of Adams Street. She was under the impression that the car changed from the slow lane to the fast lane. A witness who arrived at the scene shortly after the accident said Mrs. Reid was lying in the "fast" lane approximately two feet from the center line toward the concrete median strip. The trooper testified that he found a pool of blood 10 feet to the south of the intersection and approximately 1½ feet east (or on the median strip side) of the center line of the southbound lane.

It is conceded that the headlights on the Pegg vehicle were lighted. Pegg claimed to be driving between 45 and 50 miles per hour. The speed limit was 50 miles per hour. He stated he saw Mrs. Reid when he was approximately two to three car lengths from her; he then applied his brakes. Thereafter, the record is in part:

"Q. And did you stop your automobile at some point? A. Yes, I did, right after the point of impact. I'd say it was right after the point of impact that the car came to a complete stop.

"Q. Now, what part of your car or once you saw Mrs. Reid, how did she act from right up to the point of impact, what did you see? A. She—she just went across the road. She was walking fast. She was traveling fast like she was in a hurry to get to the divide. She didn't look. She just kept on coming and she didn't stop in the middle of the road or anything to let me by. She just went across the road. Didn't watch at all, bother to see if a car was coming."

The only damage found by the officer to the Pegg vehicle was a broken radio antenna on the right-hand side of the vehicle at the point of the curve of the windshield. No other damage to the vehicle was found. There were no eye witnesses.

If Mrs. Reid was guilty of contributory negligence, we are not obliged to determine whether there is primary negligence on the part of Pegg. *Vokroy, Adm'r v. Johnson,* 233 Md. 269, 274, 196 A. 2d 451 (1964); *U. S. F. & G. Co. v. Royer,* 230 Md. 50, 54, 185 A. 2d 341 (1962). Mrs. Reid had a duty to use ordinary care for the preservation of her own health and safety. Contributory negligence has been defined as "the neglect of duty imposed upon all men to observe ordinary care for their own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Potts v. Armour & Co.,* 183 Md. 483, 490, 39 A. 2d 552 (1944).

The rule governing use of the highway here is as stated in *Flohr v. Coleman,* 245 Md. 254, 225 A. 2d 868 (1967), where Judge Marbury said for the Court:

> "The public roads are for the general use of all members of the public, and the rights of one operating a vehicle and of a pedestrian on a public highway are mutual, reciprocal, and equal. Neither may use it in disregard of the right of the other to use it. Each must accommodate his movements to the other's lawful use of it, and each must anticipate the other's possible presence. *Mahan v. State,* 172 Md. 373, 191 Atl. 575. Pedestrians have an equal right with those in motor vehicles to use a country highway according to their need, convenience, or pleasure. *Edwards v. State,* 166 Md. 217, 170 Atl. 761. The public highway includes not only the paved portion of the highway but the shoulder. Code (1957), Article 66½, Section 2 (a) (58)." *Id.* at 265.

See also *Greer v. King,* 247 Md. 577, 580, 233 A. 2d 775 (1967), and *Lewis v. Hammond,* 247 Md. 297, 231 A. 2d 32 (1967).

Mrs. Reid cites *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517 (1945), and *Boyd, Adm'r v. Simpler,* 222 Md. 126, 158 A. 2d 666 (1960), and then asks if there are such cases holding under certain circumstances that it is a jury question as to whether the pedestrian failed to use ordinary care when he crossed *between intersections in the city,* is it not more a jury question outside a city or town where the pedestrian and driver have equal and reciprocal rights to use the highway?

In *Crunkilton v. Hook, supra,* the Court did not enunciate any rule similar to that which one might infer from the argument of Mrs. Reid. There the Court discussed the proposition generally, pointing out that a pedestrian cannot walk blindly between intersections into oncoming traffic and be heard to say that he did not see the danger which he could have seen if he had looked, and that if a pedestrian suddenly steps from a sidewalk into the path of an approaching car and either did not look to see if any car was approaching or made no effort to avoid it by stopping or stepping aside, although he could easily have seen it in time to have kept or taken a position of safety and thus avoided the accident, he is guilty of contributory negligence as a matter of law, precluding recovery by him for resulting injuries. Specifically, the Court said:

> "A pedestrian who exercises due care while using a highway is not required to be constantly anticipating that the law will be violated. Merely because a pedestrian, in a suit for damages for injuries received from an automobile, could have avoided the accident, it does not follow that he is guilty of contributory negligence; *to establish contributory negligence in such a case, it must be shown that the pedestrian knew of the car's approach, or by the use of reasonable care would have known of it, in*

*time sufficient to avoid the accident. Taxicab Co. v. Emanuel,* 125 Md. 246, 93 A. 807. Highways are for the use of everybody as avenues of communication, and no one is barred from using them by reason of his age or physical condition. Any one who uses a highway is entitled to expect that other users will exercise ordinary care to avoid causing him injury. *Mahan v. State, to Use of Carr,* 172 Md. 373, 384, 191 A. 575." *Id.* at 8. (emphasis supplied)

The Court went on in that case to hold that on the facts there presented the minds of ordinary men might differ as to whether Mrs. Hook had failed to exercise ordinary care.

In *Boyd, Adm'r v. Simpler, supra,* the accident took place on the main street of a small town when a highly intoxicated driver was operating a vehicle at an estimated speed of from 45 to 65 miles per hour; the victim should have been clearly visible to him for 350 to 360 feet before he hit her. This Court, speaking through Judge (later Chief Judge) Prescott, said, after stating the above facts:

"The above does not describe a situation where the pedestrian was disputing a motorist's right of way; Mrs. Boyd was unquestionably using every means at her command to accord the motorist the right of way, irrespective of whether she or the defendant had it at the point of collision.

"We have pointed out above that the statute creates no presumption of negligence on the part of a pedestrian crossing between intersections, although it does place upon the pedestrian the duty of exercising a great amount of care for his own safety. And we are unable to conclude that persons of ordinary and reasonable minds would all agree that Mrs. Boyd's standing in the highway talking to her friend, under the circumstances described above, or her attempt

to reach safety, constituted negligence upon her part." *Id.* at 132.

Cases holding a pedestrian guilty of contributory negligence as a matter of law when crossing between intersections in towns and cities in Maryland are numerous. No useful purpose would be served in giving a listing of them. In *U. S. F. & G. Co. v. Royer, supra,* Judge Horney for the Court, in a between intersection crossing case which arose in the town of Easton, said:

> "* * * [T]he testimony of a pedestrian, claiming that he *did not see what he must have seen had he looked,* is unworthy of consideration." *Id.* at 55. (emphasis in original)

In such a case arising in the town of Port Deposit, Judge (now Chief Judge) Hammond in *Henderson v. Brown,* 214 Md. 463, 135 A. 2d 881 (1957), said for the Court:

> "The appellant is thus left in the situation of one who either did not look when he should have, or did not see when he did look, and this, therefore, requires the finding that he was contributorily negligent as a matter of law." *Id.* at 472.

As was said by Judge Delaplaine for the Court in *Crunkilton v. Hook, supra:*

> "No absolute rule declaring what constitutes contributory negligence can be formulated to apply to all cases, because, like primary negligence, it is relative and not absolute, and it necessarily depends upon the circumstances of each particular case. The degree of care required of a pedestrian to entitle him to recover is such as would be reasonably expected from an ordinarily prudent person under the circumstances." *Id.* at 7.

Mrs. Reid was entitled to use the highway. Her right to use the highway in no way relieved her from her duty to exercise ordinary care for her own safety. The trooper's testimony was that her unobstructed view was "ap-

proximately 1000 feet, a quarter of a mile." There is no indication of rain or other adverse weather conditions. The paved portion of the highway was 24 feet 3 inches in width. Mrs. Reid said she stopped and looked before crossing the highway. If she in fact stopped and looked and saw that which an ordinarily prudent person should have seen and heeded what she saw, then she would not be guilty of contributory negligence. Here, however, she would have us believe that Pegg came into sight *after* she started across the highway and that he actually traveled 1000 feet while she was traveling a little more than 11 feet 6 inches (width of the slow lane).

The conclusion becomes inescapable that Mrs. Reid either did not look prior to crossing the road, did not see when she did look, or failed to heed that which she saw. Any one of those situations would make her guilty of contributory negligence as a matter of law, because she would not be using ordinary care for her own safety. If she had used such care, the accident might not have happened. The fact that the highway was in open country and that she was entitled to use the highway in no way relieved her from the necessity to exercise elementary precautions for her own safety.

*Judgment affirmed; appellants*
*to pay the costs.*