# BELLESON *v.* KLOHR

[No. 337, September Term, 1969.]

*Decided April 13, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*John H. Bolgiano,* with whom were *Smith, Somerville & Case* and *Ralph G. Hoffman* on the brief, for appellant.

*William E. Brannan,* with whom were *Ralph E. Deitz* and *Downes & Deitz* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

At a trial for damages arising out of an automobile accident defendant's motion for a directed verdict was denied, and a jury in Howard County returned a verdict for the plaintiff. Defendant's subsequent motion for a judgment n.o.v. was also denied, and this appeal followed.

Some of the facts of this case are not in dispute. Summarized they are that appellee Edward S. Klohr, seventy-two years old, left home before daylight on October 27, 1965, to drive to a cider mill in Carroll County, Maryland. While driving his pick-up truck north on State Route 97 the left rear tire blew out, and Klohr pulled off onto the shoulder. He got out of his truck, leaving his headlights and taillights burning, and stood on the highway. While in the roadway he was struck by the right front of a car proceeding north on Route 97 and driven by the appellant Carrie Mae Belleson. Mr. Klohr landed in the center of the north bound lane opposite or just behind the rear of his truck. Route 97 is a wider than average macadam paved two-lane highway, and from the point where Klohr's truck was stopped the view to the south is unrestricted for about one-half mile. Mrs. Belleson was

driving thirty to thirty-five miles per hour with her low beam headlights on, and first became aware of Klohr's lighted truck stopped on the shoulder about one-quarter mile ahead of her.

Klohr's version of the accident was that he thought he heard a stake fall from his truck when the tire blew, and got out to investigate. He said he looked to the south when he first stepped onto the roadway and saw no traffic. He then stood two feet onto the pavement at a point opposite the truck door, looking up in a northeasterly direction. He testified he remained standing in this position for about one minute when he suddenly became aware of headlights to his right (south), turned to see them some eight feet away, and was struck.

Mrs. Belleson was called to testify as an adverse witness by the plaintiff. She said although she saw the lighted truck about one-quarter mile before she reached it, she saw nothing in the highway until she suddenly became aware of a dark object in the middle of the north lane about two car lengths in front of her. She swerved left and applied her brakes but was unable to avoid striking Klohr. She also admitted telling the police officer investigating the accident that she did not see Mr. Klohr before hitting him.

Maryland State Police Sergeant Norman Green investigated the accident and testified Mr. Klohr told him that after his tire blew out he was crossing the road looking for his hubcap, and was stooping down to pick up pieces of rubber from the blown tire when the car struck him. Sergeant Green said Mr. Klohr explained he did not see Mrs. Belleson's car until it struck him. Appellee denied he ever gave the version of the accident related by the trooper.

With this factual background, appellant presents three grounds for reversal. These are 1) that portions of Klohr's testimony are incredible and should not have been considered, 2) that defendant should have received a directed verdict, and 3) that even if a directed verdict was not proper the trial judge erroneously refused to in-

struct the jury as to a pedestrian's duty to watch for vehicular traffic.

Appellant's initial point is that Mr. Klohr's testimony as to where he was struck is incredible and should not have been considered. She finds unbelievable Mr. Klohr's testimony that he was standing near the door when struck, and landed slightly to the rear of his truck; that is to say he was moved south by a northbound vehicle. The only Maryland authority cited is *Anne Arundel County v. Vanskiver,* 166 Md. 481, 171 A. 705 (1934). There the plaintiff claimed he drove a dilapidated Model T Ford twenty feet through sand and gravel with the front wheels buried eighteen to twenty inches. The court had no difficulty in finding this testimony so "inherently improbable" it could not legally support an inference that the gravel was of the claimed depth. While we have not refrained from applying the doctrine of physical impossibility where we found it applicable, *Cocco v. Lissau,* 202 Md. 196, 95 A. 2d 857 (1953), *Balto. & Ohio Railroad Co. v. State,* 190 Md. 227, 58 A. 2d 243 (1948), we have indicated this principle should be applied cautiously inasmuch as it is so often difficult to determine accurately the effect of scientific laws. *York Motor Express Co. v. State,* 195 Md. 525, 74 A. 2d 12 (1950). We are unable to say the testimony in the present case is physically unworthy of belief. Appellee testified that he was in the act of turning when struck and *flew up over the hood.* There is no clear proof as to what the distance was between the point where Mr. Klohr landed and where he claimed to be standing when struck. There is no testimony to negate the possibility of his rolling on the ground before coming to rest. Finally, we are not persuaded that the exact point where Mr. Klohr was standing with reference to the truck has any legal significance, if the jury believed that he was in fact standing only two feet onto the pavement. The probability of this accident occurring precisely as appellee described could of course be considered by the jury in assessing the credibility or weight of all his testimony.

Appellant argues strenuously that the evidence in this case showed appellee guilty of contributory negligence as a matter of law and it was error to let this case go to the jury on that issue. The appellant does not contest the jury's finding of primary negligence, and in considering whether a directed verdict for defendant was proper, the evidence and inferences properly deducible therefrom must of course be viewed in a light most favorable to the plaintiff. If there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury. *York Motor Express Co. v. State, supra.*

It is pertinent to observe that the accident here occurred on an open country road, and not within a town or city. Within municipal limits there are "favored zones" created by statute, so that pedestrians have a right of way at crosswalks and intersections, and motorists have a right of way between intersections. Code (1957, 1967 Repl. Vol.), Art. 66½, § 236. The principle applicable in the absence of statutory direction has been expressed as follows:

> "The public roads are for the general use of all members of the public, and the rights of one operating a vehicle and of a pedestrian on a public highway are mutual, reciprocal, and equal. Neither may use it in disregard of the right of the other to use it. Each must accommodate his movements to the other's lawful use of it, and each must anticipate the other's possible presence." *Flohr v. Coleman,* 245 Md. 254, 265, 225 A. 2d 868 (1967).

This doctrine of reciprocal rights appears to be based on the realization that outside of towns and cities the scarcity of sidewalks makes reasonable the use by pedestrians of the roadway itself.

Notwithstanding this doctrine of reciprocal rights appellant contends that earlier Maryland decisions make Klohr contributorily negligent as a matter of law when

he stands on a highway in darkness with nothing to signal his presence. In *Vokroy, Adm'r v. Johnson,* 233 Md. 269, 196 A. 2d 451 (1964), plaintiff was suing for a wrongful death caused by defendant motorist striking decedent. Decedent's car had run out of gas at night on a country road. He and his passengers had obtained gasoline and were attempting to restart the automobile. A passenger testified that when last seen, decedent was standing against the left side of the car (which was slightly on the pavement), facing away from it. The circumstances of the case compelled plaintiff to call defendant as an adverse witness. He testified he saw the stopped car and veered to the left but as he passed decedent walked into the side of his vehicle. Plaintiff having called this witness, and not being able to contradict or deny his testimony, was bound by it. In addition, what physical evidence there was tended to corroborate defendant's version of the accident. We held as a matter of law plaintiff was negligent and a directed verdict for the defendant was proper.

*Vokroy* was found to be controlling in *Greer v. King,* 247 Md. 577, 233 A. 2d 775 (1967). There plaintiff was walking down a country road at night when he saw defendant's car approaching from his rear. He crossed from the side of the roadway where he was walking and positioned himself on the other side, attempting to hitchhike. Although he had actual knowledge of the approach of the automobile, he maintained this position and was struck. He testified he could have taken two steps backward onto the shoulder and removed himself from potential danger, but did not do so because the shoulder was muddy. A judgment n.o.v. on the basis of contributory negligence was affirmed by this Court.

We do not find these cases controlling. *Vokroy* is apparently simply another in a long series of cases where we have held that a pedestrian crossing a public highway, at least in darkness, is required in the exercise of due care to look for approaching traffic, and to heed what he sees. The most recent case illustrating this principle

is *Reid v. Pegg,* 256 Md. 289, 260 A. 2d 38 (1969). There plaintiff was attempting to cross two lanes of a four-lane highway. She said she looked and saw no traffic before she began to cross and was struck while entering the "fast" lane from the "slow." The distance she traveled before being struck was at most thirteen feet. It was conceded that she had an unobstructed view of 1000 feet in the direction from which defendant's car came. It was also conceded that it was dark and defendant's headlights were lit. This Court held that under these circumstances plaintiff must either not have looked, or if she did she must not have heeded what she saw and that either of those circumstances would constitute contributory negligence as a matter of law. *Lewis v. Hammond,* 247 Md. 297, 231 A. 2d 32 (1967); *Domeski v. Atlantic Refining Co.,* 202 Md. 562, 97 A. 2d 313 (1953).

We are also convinced that in light of other Maryland authorities, *Greer v. King, supra,* must be limited to its special facts. Plaintiff in that case was dressed in dark clothing, and he stood in a poorly illuminated area against a dark background of trees. Most importantly he stood and watched the automobile as it steadily bore down on him and continued watching the car without moving until it struck him. He was obviously more concerned with procuring a ride than with a reasonable man's concern for his own safety. We found *Greer* similar to *Martin v. Sweeney,* 207 Md. 543, 548, 114 A. 2d 825 (1955), where plaintiff remained sitting in a truck which had skidded across a median strip and was facing the wrong way on the edge of a high-speed two-lane highway. In *Greer* we quoted *Martin* at 548,

> "Conversely, where one who remains in a place of danger with the time and the physical ability to leave, and is harmed, the courts have often held such failure to act to be contributory negligence as a matter of law."

Our reason for viewing *Greer* as somewhat anomalous is that repeated decisions of this Court have held that

where a pedestrian is injured while walking along or standing on a highway, the question of his contributory negligence is usually for the jury. *Fotterall v. Hilleary,* 178 Md. 335, 13 A. 2d 358 (1940) ; *Mahan v. State,* 172 Md. 373, 191 A. 575 (1937) ; *Hall v. Albertie,* 140 Md. 673, 118 A. 189 (1922) ; *Mears v. McElfish,* 139 Md. 81, 114 A. 701 (1921). See also 4 Blashfield, *Automobile Law and Practice,* § 143.1 (1965). In *White v. State of Maryland,* 106 F. 2d 392 (4th Cir. 1939), two pedestrians were walking from a tavern to a restaurant located about one hundred feet to the south on the opposite side of a public highway. They were struck and killed by defendant's southbound automobile apparently while walking on the highway or the right shoulder. The Circuit Court of Appeals, in affirming the refusal of Judge Chesnut in the District Court to grant a directed verdict, stated the law of Maryland to be "that an operator of a motor vehicle has no right to assume that the road is clear, but that under virtually all circumstances and at all times, he must be reasonably vigilant and must anticipate and expect the presence of others. One driving an automobile along a public highway at night is bound to anticipate the presence of pedestrians upon it." *White v. State of Maryland, supra,* and *Mahan v. State, supra,* were cases where the pedestrians died as a result of the accident and so were entitled to the benefit of the presumption that each exercised due care for his safety, *Gresham v. Commissioner of Motor Vehicles,* 256 Md. 500, 260 A. 2d 649 (1970), but the same strong statement of reciprocal rights was repeated in *Fotterall, Hall* and *Mears,* all *supra,* where this presumption did not apply.

The principle of reciprocal rights was developed in an age when conditions were vastly different from today. Pedestrians are not so likely to be found on highways as formerly, and more often than not the congestion of all state highways makes it increasingly difficult for a motorist effectually to yield to pedestrians lawfully in the highway. Nevertheless the decision of this Court in *Critzer v. Shegogue,* 236 Md. 411, 204 A. 2d 180 (1964) dem-

onstrates that the doctrine still retains its vitality. In that case the plaintiff was walking at night on the right side of a highway, alternately on the paved portion or the shoulder. Defendant bus driver was proceeding in the same direction as plaintiff in the right lane and struck him. Against the contention that the bus company should have been granted a directed verdict this Court said

> "The above evidence was sufficient to take the case to the jury on at least two theories. From it, the jury could have found (although they could have adopted appellants' theory as to how the accident occurred) that the plaintiff was struck while walking on the paved portion of the highway because of the driver's failure to keep a proper lookout, or that the driver carelessly ran into the plaintiff while he was on the shoulder attempting to flag the bus to a stop." 236 Md. at 417.

The fact that either of these theories was sufficient to take the case to the jury necessarily implied that plaintiff was not guilty of contributory negligence as a matter of law. See *Perry v. McVey,* 345 F. 2d 897 (4th Cir. 1965).

Our review of these cases convinces us that in the present case, it was for the jury to pass on the question of Mr. Klohr's negligence. This conviction is strongly reinforced when we consider the uncontradicted fact that Klohr's truck was parked in plain view with the lights burning. Virtually all jurisdictions recognize that emergencies and mechanical failures occur along highways in the normal course of travel, and that motorists should be alert to danger of persons in the area of disabled vehicles, especially lighted ones. Occupants of stalled vehicles have the right to make reasonable repairs and need not anticipate that other motorists will entirely disregard their presence. See *Wiggins v. State, Use of Collins,* 232 Md. 228, 239-40, 192 A. 2d 515 (1963), 7 Am.Jur.2d, *Automobiles and Highway Traffic,* § 381 (1963) ; 4 Blashfield,

*Automobile Law and Practice,* § 144.6, *et seq.*; Annot. 61 A.L.R. 1159 (1929) ; *McVey v. Whittington,* 248 S. C. 447, 151 S.E.2d 92 (1966) ; *Cowles v. Zahn,* 206 Va. 743, 146 S.E.2d 200 (1966).

Appellant also argues that appellee if not guilty of contributory negligence assumed the risk of injury by standing where he did at night. The distinction between these two concepts in a given case can be exceedingly fine. We believe that consideration of the defense of assumption of risk in this case does not add any dimension not already considered under the heading of contributory negligence. See the discussion in *Wiggins v. State, Use of Collins, supra,* at 240, and in *Cowles v. Zahn, supra,* 146 S.E.2d at 204.

For all of these reasons we hold that it was clearly not error for the trial judge to submit the issue of contributory negligence to the jury. We might add as a corollary if the jury had concluded plaintiff was in the process of crossing the road, that would have been ample basis for a finding that he was guilty of contributory negligence.

Appellant's third contention is that she was entitled to the following requested instruction:

"You are instructed that under the laws of the State of Maryland, pedestrians using public highways which are located outside of towns and cities, as in this case, have a duty to watch for and expect to find approaching vehicular traffic. If you shall find from the evidence in this case that the plaintiff failed to exercise reasonable care and caution to watch for and avoid the automobile driven by the defendant, and that such failure on his part directly caused or contributed to the happening of the accident, then you shall find that the plaintiff was guilty of contributory negligence, and if you shall so find, your verdict must be in favor of the defendant, Carrie Mae Belleson."

We think the trial judge was correct in refusing to give this charge. It is tainted with the same undue emphasis on the duty of one party as was found to exist in *Flohr v. Coleman*, 245 Md. 254, 225 A. 2d 868 (1967), where the plaintiff as appellant sought an overly favorable instruction. In *Flohr* and in this case, the essence is that both the rights and duties of those using the public highway are reciprocal. Contrary to appellant's suggestion that the trial judge did not properly instruct the jury as to a pedestrian's duty, the record reveals he told them:

". . . the public roads of this State are for the general use of all members of the public and the rights of one operating a vehicle and of a pedestrian upon a public highway are mutual, reciprocal and equal. Neither may use it in disregard of the rights of the other to use it. Each must accommodate his movements to the other's lawful use of it and each must anticipate the other's possible presence. Pedestrians have an equal right with those in motor vehicles to use a country highway according to their need and convenience or pleasure. A public highway includes not only the paved portion of the highway, but the shoulder. In the absence of any statute, ordinance or special circumstances a pedestrian has, in the exercise of due care for his own safety under the conditions existing on the highway, the right to travel anywhere upon a public highway and he is not negligent as a matter of law in walking on the paved portion instead of the shoulder.

"A pedestrian is not under a legal duty to look back or watch behind to see if he is in danger of being struck or run down by any vehicle approaching him from the rear, although he must anticipate vehicles on the highway and have due regard for their rights to use it and for his own safety. The pedestrian may assume that the

driver will use ordinary care for his protection and the driver may assume that the pedestrian will exercise ordinary care for his own safety. Drivers of motor vehicles must exercise due care and caution and anticipate pedestrians on the highway regardless of the part of the highway on which pedestrians may be."

These instructions substantially copy the language used in this Court's opinion in *Flohr v. Coleman, supra.* Nevertheless, we are constrained to mention that the portion of our holding in that case which indicates generally a pedestrian on a country highway has no "legal duty to look back or watch behind to see if he is in danger of being struck or run down by any vehicle approaching him from the rear" no longer commends itself to us, and in the future it should not be given as a general instruction.[1] As we noted earlier, with the great increase in use of highways by motor vehicles there has been a corresponding decrease in their use by pedestrians and failure to watch for vehicular traffic no longer is always compatible with the conduct of an ordinarily prudent person. Whether it is contributory negligence for a pedestrian to occupy a given portion of a public highway depends upon the circumstances of each case and usually is a question for the jury. Factors such as the plaintiff's position, either walking or standing, on the pavement or shoulder, the volume of vehicular traffic, or the weather conditions may have decisive bearing on a jury's determination as to whether failure to look back was contributory negligence. The standard of care required remains ordinary care, but what actions are necessary to achieve that standard will vary; it is obvious greater vigilance to the rear is demanded of a pedestrian who does not walk facing oncoming traffic.

---

1. The General Assembly of Maryland during its 1970 session enacted (Senate Bill No. 10) a new Article 66½ (Vehicle Laws) of the Annotated Code of Maryland. This act, if approved by the governor, takes effect on January 1, 1971. It appears this new enactment substantially changes the law relating to the use of streets and highways by pedestrians.

We shall not consider further the effect of the small portion of the instruction we have just discussed because the prohibition against its use we here express is intended to be prospective. In addition, counsel took no specific exception to its inclusion. We find on the whole the remainder of the charge adequately stated the relative rights and duties governing the conduct of these litigants. While it is usually more helpful to a jury to have instructions which take into account the factual contentions of the parties, such a charge is not required, and one in general terms may be given. *Lemons v. Chicken Processors,* 223 Md. 362, 164 A. 2d 703 (1960).

*Judgment affirmed. Costs to be paid by appellant.*