**508**

Michael T. MANDIO and Nancy B. Mandio, Plaintiffs,

v.

Felix CARLO, Individually, and as Next Friend and Guardian Ad Litem for Kathleen V. Carlo, Defendant.

Superior Court of Delaware, New Castle.

April 29, 1971.

Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiffs.

Richard Pell, of Tybout & Redfearn, Wilmington, for defendant.

STIFTEL, President Judge.

Plaintiffs, husband and wife, brought actions[1] for damages as a consequence of injuries suffered by Mrs. Mandio, who was struck from behind by a car as she walked from a school parking lot after a football game. The Court charged the jury on two common law violations against the defendant driver: (1) Failure to maintain the proper lookout while operating her motor vehicle and (2) Failure to keep her car under proper control. The jury was also instructed on plaintiff wife's contributory negligence. A verdict was returned announcing "both parties negligent". Plaintiffs moved for new trial. Their claim is that the jury should not have been instructed on contributory negligence because there was no record evidence to support such a charge.

Plaintiffs testified to the following facts at trial: On Saturday, November 10, 1967, plaintiffs, with two of their minor children,

1. Husband's action was for loss of consortium.

attended a high school football game in which their third child was playing. After the game, the spectators walked through a parking lot immediately behind the field and exited from the lot through a gate twenty feet wide. The gate served as the only exit for both cars parked in the lot and pedestrians walking through the lot. A continuous paved surface extended from the parking lot, through the gate, and out to a one-way drive which passed from left to right in front of the gate. The one-way drive then turned left beyond the gate and proceeded straight out to Milltown Road.

Plaintiffs' counsel contends that pedestrians were exiting, as was the custom, through the left lane, leaving the right lane free for cars to pass through the gate. However, Mr. Mandio's testimony on direct examination by his own attorney conflicts with this contention.

"Q. Were the cars coming out of the gate in any particular lane?

"A. No, not that I recall.

"Q. Were pedestrians coming out of the gate in a particular lane?

"A. No." (Tr. p. 13)

Whatever the custom was, plaintiffs and their daughter were walking out toward the left side of the roadway. Mrs. Mandio was walking alone, a short distance ahead of her daughter and husband. At no time did she look back in the direction from which cars were coming. Having passed through the gate, the family was bearing left toward another lot where they had parked their car. When Mrs. Mandio was approximately ten feet beyond the gate, her husband, hearing the screech of tires behind him, turned and saw a car coming at them.[2] He jumped safely aside, pulling his

daughter with him, and shouted a warning to his wife. When warned, Mrs. Mandio assuming a car was approaching on her right, turned sharply to the left, but not in time to avoid being struck on the back of her right leg. The blow, without knocking her down, spun her completely around in time to see a blue Volkswagen proceed down the drive toward Milltown Road. Mr. Mandio unsuccessfully chased the car for two hundred yards before it turned onto Milltown Road and drove out of sight. He got the license number.

Defendant, Kathleen Carlo Truet, a high school student at the time, drove her father's blue Volkswagen to the game on the day in question. She admits driving through the gate after the game. She offers no testimony directly concerning the accident because she contends that she did not hit, or at least did not know she hit, Mrs. Mandio. Mrs. Treut has no memory whatsoever of seeing or passing plaintiffs at or near the gate. Two passengers in her car remember seeing a man running down the drive behind them, but did not realize he was pursuing them.

Plaintiffs claim that the Court should not have instructed the jury as follows:

"* * * a pedestrian must exercise the ordinary care that a pedestrian would exercise under similar circumstances and look to see what is visible to be seen while traveling on a roadway where cars are traveling or can reasonably be expected to travel. Although there is not a duty to constantly look to the rear for approaching vehicles, it is expected, however, that the pedestrian walking where cars are traveling look to the rear occasionally for the preservation of her own safety."

Mrs. Mandio said that under the law and facts, she had no legal obligation to look to

2. Plaintiffs' Exhibit # 2 shows that Mrs. Mandio (as shown by Mr. Mandio) was standing almost in the middle of the lane which came from the left of the gate when she was struck.

the rear occasionally for her own safety and that she had a right to assume that automobiles approaching from the rear would exercise ordinary care in keeping a lookout for her. She admitted she did not look over her shoulder at traffic approaching from behind her.

Mrs. Mandio was on private property. She was walking in the same direction as the traffic was moving. No pedestrial-walk was delineated. Mrs. Mandio considered it a roadway.[3]

■ Mrs. Mandio had a right to use this private roadway but in making use thereof she was bound to exercise for her own protection care commensurate to the risk of the danger. See 2 Stevenson, Negligence in the Atlantic States, Sec. 693. There is no fast rule on the obligation of a pedestrian to look to the rear. It depends on the circumstances of the particular case. It depends upon the place, the pedestrian's ability to observe the current of traffic, local conditions, the position of the pedestrian, position and direction of the moving vehicles, etc. See Lamont v. Adams, 264 Pa. 17, 107 A. 373, 374; Belleson v. Klohr, 257 Md. 642, 264 A.2d 274, 280. There can be no set rule for all cases.

While the pedestrian has a right to assume that the driver of an automobile would be on the lookout for her, she is also required to be on the lookout for the automobile if the circumstances require, since she is bound to exercise ordinary care at all times for her own protection, depending upon the situation in which she finds herself. McKenna et al. v. Lynch, 289 Mo. 16, 233 S.W. 175, 176.

■ Mrs. Mandio was on a roadway used in common with vehicles. Both were exiting from a stadium area where a football game had just been played. There were lots of people and lots of cars. Most of the pedestrians were keeping to the left and the cars were keeping to the *right*. There was no visible line separating their course of travel. Although Mrs. *Mandio* said she was walking in an area customarily used only by pedestrians, nevertheless, the jury could have concluded from the evidence that her movement was such as to partially interfere with the customary travel of vehicles using the same roadway going in the same direction. Mrs. Treut said she traveled properly on the roadway. At times, it was important for Mrs. Mandio to look to her right side and behind her to make sure that the many cars that were exiting were not approaching her line of travel, for if they were, she could have moved to her left to avoid a pedestrial-vehicular confrontation. She was not in hopeless peril.

This Court did not decide that Mrs. Mandio was contributorily negligent as a matter of fact and law. The issue of her contributory negligence under the circumstances of this case was for the jury. Plaintiffs claim, however, that even if Mrs. Mandio was negligent in failing to look behind her, her failure so to do was not the proximate cause of what occurred. Just as negligence of a defendant is of no consequence unless it is a proximate cause of an injury, so negligence of the plaintiff does not bar recovery for her injury caused by a wrong action of the defendant unless the plaintiff's negligence is a contributing, proximate cause of the accident. Proximate cause is normally a question of fact. On this motion, where the jury demanded by plaintiff Mrs. Mandio returned a verdict against her, only the facts most favorable to the defendant must be considered. Defendant said her car was moving very slowly before she reached the gate from the lot where her vehicle was parked, that cars were moving almost bumper to bumper and probably no more than 10 miles per hour. The jury could have concluded from what they heard that if Mrs. Mandio had

---

3. Attorney: "Q. The area where you were injured was a paved surface?

Mrs. Mandio: "A. Yes, the roadway."
(Tr. pp. 65, 66).

on occasion looked to her right side and rear she would have seen the position of defendant's vehicle so that she could have taken action to avoid being struck by it.

In the instant case, this would have required only a slight deviation from her course of travel because the facts indicated that there was a brushing of the leg by the car and that her major injury, which occurred to her neck area, took place as a consequence of the abrupt turn she made to attempt to avoid being struck after her husband had yelled a warning. The jury could have concluded that she could have avoided being struck if she had just looked behind her occasionally.

Motion denied.

It is so ordered.