PAUL A. McGARREY *v.* CLIFFORD H. DUFFY
[No. 43, October Term, 1938.]

*Decided January 11th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, MITCHELL, and SHEHAN, JJ.

*Frederick W. C. Webb,* with whom were *Joseph Y. Gunby* and *Woodcock, Webb, Bounds & Travers* on the brief, for the appellant.

*W. Edgar Porter* and *Richard E. Cullen,* submitting on brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

Paul A. McGarrey, the appellant, sued Clifford H. Duffy, individually and trading as Duffy's Cabs, for injuries occasioned him by reason of an accident on Camden Street in Salisbury, Maryland.

The declaration alleges that on the 18th day of September, 1937, the defendant recklessly, carelessly and negligently caused an automobile or cab owned by him,

and operated by Earl P. Adkins, his employee, to collide with and strike the plaintiff, and as a result of this collision he was seriously and painfully injured. At the conclusion of the entire testimony the trial court granted a prayer withdrawing the case from the consideration of the jury. From the judgment for defendant this appeal is taken.

It will be necessary, in order to properly consider this case, to give in short detail a description of the streets in Salisbury at and near the place of the accident. Camden Street, on which the accident occurred, is one of the principal thoroughfares of this city. It extends east and west, and one block north of this street and running parallel with it, is Main Street. Running south is Market Street, and to the eastward thereof is Division Street. Camden Street connects with and ends at Division Street. Near the middle of the block and on the north side of Camden Street is Watson's store. The distance from Division Street along Camden Street to Market Street is 794 feet, and the distance from the place of the accident to Division Street is 349 feet, and to Market Street is 345 feet. The width of Camden Street from curb to curb is twenty-three feet.

On the night of the accident the plaintiff, Paul A. McGarrey, was riding with one Gaylord Tull in an automobile. Tull and the plaintiff had stopped for some purpose on Main Street and had proceeded thence westward to Market Street, thence southward one block to Camden Street, and had there made a left turn and had come to a stop on the south side of Camden Street, opposite Watson's store and in the rear of a line of cars that were parked along the curb. McGarrey testified that he alighted from the automobile, which had stopped for the purpose of permitting him to go to Watson's store to purchase fishing tackle. He told Tull that he would be gone but a few seconds. He then proceeded to the rear of the automobile in which he had been riding and turned to cross the street. When he came to the left hand rear wheel and fender of the automobile, he placed his hand

on the fender and looked eastward toward Division
Street for approaching traffic, and only saw crossing
Division Street, approximately 349 feet distant, an auto-
mobile which started to turn into Camden Street but
did not do so, and proceeded southward on Division
Street across the end of Camden Street. He then turned
his head to look westward on Camden Street, and saw
nothing approaching. He then took one step and started
to take a second step, when he was hit by the cab in
question, which was proceeding westward on Camden
Street. His testimony shows that he had a clear and
uninterrupted view up Camden Street to Division Street.
This in substance is the testimony relied upon by the
plaintiff to carry his case to the jury.

It is evident that the line of cars parked on the south
side of Camden Street did not interfere with the plain-
tiff's vision, because, when he took the step beyond the
rear of the Tull automobile, they were not in his line
of vision, and he could see the entire distance up Cam-
den Street to Division Street, and could see the maneuver-
ings of a car crossing the end of that stret, and could
see it disappearing southward on Division Street. Some
reliance seems to be placed upon the parking of a single
car on the north side of Camden Street, but that too
did not seem to interfere with the vision of the plaintiff.
It was parked about 300 feet from Division Street, and
45 feet from the plaintiff's position at the time of the
observation made by him of the car crossing the end of
Camden Street, as above recited. The position of the
parked car, however, marked out the lane of clear travel
on the street, that is, a lane between parked cars on a
highway the bed of which was twenty-three feet wide,
and the fact rendered it reasonably careful for Adkins
to be driving to some extent across the center of the
street.

It is important to clearly indicate the action of the
plaintiff immediately before he started to cross the street,
and while passing in the rear of and standing at the
left fender and wheel of the automobile. Just what

occurred at the instant before the accident is of importance in this case because the right to have the case submitted to the jury must largely depend upon the facts there presented by the plaintiff. The record in this connection shows:

"Q. You looked toward Division Street? A. Yes, sir. Q. And saw this car which seemed to turn in to Market Street. A. Camden Street. And then it kept on south on Division Street. Q. Well, when you saw that car keep south on Division Street instead of turning in Camden Street, what other car, if any, did you see coming towards you from Division Street? A. I saw the first car when he started to turn in Camden Street and changed his course and went on out Division Street. In the meantime I looked toward Market Street and saw Mr. Shores. Just as I looked toward Market Street I started across. I made one step out and started to make the second step when the lights flew up in my face and heard the brakes. In the meantime I threw my hand up like this. Q. When you got to that point in the street, can you state whether or not you had reached the middle of the street? A. No, sir. I had not reached the center. I was still on the south side of the center of the street. Q. When you looked you saw an automobile? A. Yes, sir. Q. From what direction was it coming? A. Coming down Camden Street from Division. Q. Were you in that short instant able to gauge the speed of the car? A. No, sir. Q. Can you say whether or not it was coming fast or slow? A. Well, I can only judge by the applying of the brakes. In other words, the glare of the lights popped up in front of my face all of a sudden. Q. What do you say about the brakes? A. I heard the crying of the brakes; sound like the dragging of the tires. Q. Mr. McGarrey, when you first saw that car, how far was it from you, if you know? A. I don't know. · It was just like a flash. Q. Will you tell me, please, if you can, that is, what the interval of time was between the period when you last looked toward Division Street and the time that you again looked that way and saw this car on top of you? A. Well, it was

638

just a matter of time to turn my head to the right and then turn and look to the left. Q. You are sure, however, you turned and looked toward Division Street before you attempted to cross that street? A. Yes, sir. Q. And no car was in sight at that time except the car that kept on south on Division Street? A. No, sir."

The plaintiff's companion, Tull, testifying for him, estimated that McGarrey, when struck, had been gone from the automobile long enough to have crossed the street.

The result of this testimony is that while Adkins, in the cab, was driving along the street with a clear right of way between crossings (Code [Supp. 1935] art. 56, sec. 209), McGarrey, without giving him notice or reason to expect that any one would start to cross in front of him there without seeing and avoid him, stepped suddenly from between the parked cars on one side and in the path of the cab, which was then close by. If he had looked with care sufficient to select a safe time for crossing, he must have seen the cab or its lights, and known that this was not the time. And he would not have been struck. Obviously he did not look with that requisite care, as he thinks he did. In the opinion of this court he proved himself to be the author of his own injury, and a prayer for direction of a verdict for the defendant because of his contributory negligence as a matter of law should have been granted, as it was. *Webb-Pepploe v. Cooper,* 159 Md. 426, 151 A. 235.

As that conclusion disposes of the case, there is no need of discussing possible inferences of negligence on the part of the cab driver.

*Judgment affirmed, with costs.*