UNITED STATES FIDELITY AND GUARANTY COMPANY ET AL. *v.* ROYER, ETC., ET AL.

[No. 60, September Term, 1962.]

*Decided November 13, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Edward T. Miller* and *Ernest M. Thompson,* with whom was *Charles E. Wheeler* on the brief, for the appellants.

*William H. Adkins, II,* with whom were *T. Hughlett Henry, Jr.,* and *Henry, Henry & Adkins* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

In this action for personal injuries sustained by a pedestrian as the result of being struck by a motor vehicle as he was crossing a street between crossings, the trial court granted a directed verdict in favor of the defendants against the actual and equitable plaintiffs primarily on the ground that the pedestrian was contributorily negligent as a matter of law, and the plaintiffs appealed.

The action was brought by the United States Fidelity and Guaranty Company (compensation insurance carrier) on behalf of itself and Wallace E. Clark (equitable plaintiff), pursuant to the provisions of Code (1957), Art. 101, § 58, against LeRoy M. Royer and John C. Barto, individually and t/a Royer and Barto (employers of operator) and Charles H. Sprinkle (operator of the motor vehicle).

The elderly pedestrian, who was employed as a gardener at the Talbottown Shopping Center, had gone on an errand for his employer, and was returning from a filling station at the southeast corner of the intersection of Harrison and Washington Streets, to the shopping center on the easterly side of Washington Street and the northerly and easterly sides of Harrison Street. In this area of the town of Easton, Harrison Street, which in the main is a north-south street, curves westerly in a quarter-circle to intersect Washington Street, another north-south street. Both are major streets; both are forty-four feet wide; both are in a 25-mile speed zone; and both are normally heavily traveled in the daytime. There was no traffic light or marked crosswalk at the intersection of Harrison and Washington Streets. A ramp (or sloping sidewalk) extended from the filling station to the east side of Washington, but at the time of the accident there was no pavement on the south side of Harrison: instead an earthen embankment sloped down to the curb on that side. The area immediately to the north and east of the north side of Harrison was paved as a parking lot for the shopping center.

On leaving the filling station, the pedestrian walked along

the top of the embankment for a distance of about fifty feet, and then, after looking in all directions (north on Washington, to his left or west, and to his right or east on Harrison) and seeing no vehicular traffic, he proceeded catercornered down the embankment in a northeasterly direction toward the shopping center. At the curb, he looked a second time in all directions and, although there was nothing to prevent his seeing vehicular traffic to the north on Washington (as well as to the west and east on Harrison), he saw nothing. He then entered Harrison, still going in a diagonal direction, and had taken only four to six steps when he was struck and seriously injured. For the third time, as he was crossing the street, he had glanced backward—a fact that was corroborated by an onlooker—but even then he neither saw nor heard the vehicle prior to the impact.

The operator of the motor vehicle (a light-colored panel delivery vehicle) approached the intersection on Washington from the north and made a left turn to the east on to Harrison, where he was blinded by the morning sun. He never saw the pedestrian before striking him. The impact knocked the pedestrian down, but he was not dragged or run over. After the collision, which took place in the eastbound lane, the pedestrian was about twelve feet north of the southerly curb on Harrison. There was no evidence as to the rate of speed the vehicle was traveling before the accident happened, as to skid marks or how far the vehicle moved after the impact, as to whether the operator was keeping a proper lookout for vehicular and pedestrian traffic, or as to what efforts the operator made to slow down or stop the vehicle after he had been blinded by the sun.

On the evidence produced by the plaintiffs, the lower court granted the motion of the defendants for a directed verdict on the theory that the plaintiff was guilty of negligence as a matter of law in failing to yield the right of way between street crossings to vehicular traffic, and further ruled that the evidence was insufficient to show primary negligence on the part of the operator of the motor vehicle.

Three questions are presented by the appeal: (i) whether there was sufficient evidence to submit the issue of primary

negligence to the jury; (ii) whether the pedestrian was contributorily negligent as a matter of law; and (iii) whether there was any evidence to warrant an application of the doctrine of last clear chance.

### (i) and (ii)

It is not necessary to consider the first question presented, for even if it is assumed, without deciding, that there was sufficient evidence of primary negligence to warrant submission of that issue to the jury, it appears that the pedestrian was contributorily negligent as a matter of law.

The thrust of the plaintiffs' argument seems to be that since the pedestrian was exercising due care in crossing the street and there was no vehicle in sight to which to yield, he was not required to anticipate the unforeseeable incidents that the operator of the vehicle would be blinded by the sun upon turning into Harrison Street at a speed greater than was reasonable and prudent under the circumstances; and that, for these reasons, it was error to take the case from the jury. We do not agree.

The statute—Code (1957), Art. 66½, § 236 (a)—is explicit that vehicles have the right of way between street crossings [1] in towns and cities. And while it is true that a pedestrian who crosses a street between crossings is not negligent *per se,* he is nevertheless required, when he undertakes to do so, to use the greatest of care to protect himself from injury. *Campbell v. Jenifer,* 222 Md. 106, 159 A. 2d 353 (1960) ; *Love v. State, use of Nelson,* 217 Md. 290, 142 A. 2d 590 (1958) ; *Henderson v. Brown,* 214 Md. 463, 135 A. 2d 881 (1957). Furthermore, in crossing a street at a point where he does not have the right of way, a pedestrian must conform himself to such vehicular traffic as may be on the street, and it is generally no excuse if he fails to see or hear approaching traffic. *Love v. State, use of Nelson, supra; Henderson v. Brown, supra.*

---

1. A crosswalk (or crossing) is that portion of a roadway indicated by lines or other markings as and for a pedestrian crossing, or, if there are no such lines or markings, then a crosswalk is that portion of a roadway ordinarily included "within the prolongation or connection of the lateral lines of sidewalks at intersections." Code (1957), Art. 66½, § 2 (a) (9).

The Maryland cases hold that a pedestrian crossing a street between crossings is guilty of contributory negligence as a matter of law if he fails to look for vehicular traffic, or, if having looked, he fails to see an approaching vehicle. *Love v. State, use of Nelson, supra,* and the cases therein cited. In stating the rule in *Webb-Pepploe v. Cooper,* 159 Md. 426, 151 Atl. 235 (1930), it was said (at p. 430) that if a pedestrian claims he did not see what he must have seen had he looked, "the court will reject the testimony as unworthy of consideration" and will assume that the pedestrian "either imprudently did not look when it was his duty to look * * * [or] that, looking, he saw and then rashly adventured to make his passage in the face of its obvious peril."

There are also cases holding that whenever a motor vehicle has the right of way, it is negligence as a matter of law for a pedestrian to leave a place of safety for a position of danger without looking for approaching traffic. See, for example, *Billmeyer v. State, use of Whiteman,* 192 Md. 419, 64 A. 2d 755 (1949), where it was held that when a pedestrian walks from a place of safety and keeps on walking across a town street without observing an approaching vehicle, he is guilty of negligence as a matter of law. See also *Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81 (1946). And compare the recent cases of *Leonard v. Hanson,* 225 Md. 76, 169 A. 2d 459 (1961), and *Grove v. Delp,* 227 Md. 316, 176 A. 2d 781 (1962).

When the law is applied to the facts and circumstances in this case, where the pedestrian, although claiming he looked not once but thrice for approaching vehicular traffic, yet did not see the oncoming vehicle that was approaching him, it is apparent we must apply the rule that the testimony of a pedestrian, claiming that he *did not see what he must have seen had he looked,* is unworthy of consideration. Furthermore, we think it is clear that the only rational conclusion reasonable minds could reach on the evidence presented is that the pedestrian, who had left a place of safety for a position of danger, was negligent as a matter of law in not yielding the right of way between street crossings to vehicular traffic.

In reaching this conclusion we are not unmindful of the holding in *Boyd v. Simpler,* 222 Md. 126, 158 A. 2d 666

(1960), cited by the appellants. That case is distinguishable on the facts, for it was held in *Boyd* that the pedestrian was not required to anticipate and guard against the unforeseeable conditions created by a drunken operator driving at an excessive rate of speed on the wrong side of the street.

(iii)

Having assumed for the purposes of this case that the operator of the vehicle was also negligent, there was concurrent negligence up to the time of impact and the doctrine of last clear chance does not apply. See *State, use of Taylor v. Barlly,* 216 Md. 94, 140 A. 2d 173 (1958).

The judgment appealed from must be affirmed.

*Judgment affirmed; appellants to pay the costs.*