## LEWIS *v.* HAMMOND

[No. 381, September Term, 1966.]

*Decided June 30, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*Kenneth J. Mackley* and *Howard W. Gilbert, Jr.,* for appellant.

*Elwood E. Hauver,* with whom were *Charles F. Wagaman, John S. Hollyday* and *Wagaman, Wagaman, Meyers & Hauver* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

Appellant, Alice G. Lewis, individually, as mother and next friend of David L. Lewis and as administratrix of the estate of Edgar J. Lewis, instituted an action against appellee, Frank L. Hammond, for damages arising from the death of Edgar J. Lewis, who, while a pedestrian on a street within the corporate limits of Sharpsburg, Maryland, was struck and killed by an automobile driven by the appellee. Following the jury's rendering a verdict in favor of appellant, appellee filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial. The lower court granted the motion and entered a judgment n.o.v., from which this appeal and cross-appeal have been taken.

The essential facts are these: On the evening of January 9, 1965, the appellee and his friend, Gilbert N. (Butch) Milburn, were riding about the Sharpsburg, Maryland, area in appellee's 1959 Thunderbird automobile, making stops at a tavern on the road between Shepherdstown and Martinsburg, West Virginia, and the appellee's home. The accident occurred at about 9:45 p.m. while the appellee was driving his automobile in a easterly direction on Main Street, a 37-foot wide thoroughfare, and the deceased, Edgar J. Lewis, was attempting to cross the street. Neither appellee nor Milburn were sure whether the deceased was crossing the street from north to south or south to north. The point of impact occurred directly across from the dece-

dent's home (north side of Main Street) near his car parked at the south curb. At the place of the accident, Main Street traverses a residential section of Sharpsburg with shade trees flanking both sides of the street. The contour of Main Street is such that at the point of impact it is slightly downgrade going eastward and there is clear visibility from the point of impact westward for at least 400 feet. At the scene of the accident the posted speed limit on Main Street was 30 miles per hour.

Appellee testified that at the time of the accident a light rain was falling and the road was wet; however, he didn't think he had his windshield wipers on at the time and according to him the street was well lighted. A witness for the appellant testified that the street was dry, while Milburn, the passenger, testified that it was raining at the time. Appellee further testified that he was traveling at 20 to 25 miles per hour and in his statement to the state police, which was admitted into evidence, stated that he first observed the deceased when he was about seven feet in front of his car, at which time he applied his brakes as hard as he could and swerved his car to the left. Appellee's car was in good mechanical condition in all respects and all four tires had a good tread on them.

Following the impact the decedent was thrown upon the hood of appellee's car, partially through the windshield. While carrying the body of the deceased, the appellee's car skidded into a parked car 146½ feet away, whereupon the decedent's body fell off the appellee's automobile and became wedged under the rear wheel of the parked vehicle. The force of the impact with the parked automobile shoved the latter into a second parked car. After impact with the first parked car, the appellee's vehicle skidded sideways 18 feet, coming to rest at a 90 degree angle facing the south curb some 164½ feet from the point of impact with the deceased.

Trooper Stickler of the Maryland State Police testified that he arrived at the scene at approximately 10:40 p.m. and found the street blocked to traffic. It was his opinion that none of the vehicles involved had been moved since the happening of the accident at the time he arrived. He described the illumination at the scene as "poor." Trooper Stickler testified that going westward from the ultimate resting place of the appellee's

vehicle he traced "four distinct tire marks indicating that the vehicle had skidded sideways for eighteen feet" after it had struck the first parked car. He then stated that continuing westward from the impact with the first parked car "there were four distinct black slide marks for approximately nine, ten or eleven feet * * *." He further testified that: "Then, there were tire marks, wheel marks, just two of them in a straight line back to a point opposite the Lewis [decedent] vehicle." According to the diagram prepared by the trooper the sum total of these skid and tire marks was 164½ feet. Based on analysis of the tire marks, appellant's expert, W. Roy Ostrum, was allowed to testify, over objection, that appellee's car was traveling at a minimum speed of 51 miles per hour at the time of impact and, in view of its crashing into the first parked car and then skidding sideways 18 feet, it was his opinion that appellee's vehicle must have been going at a considerably greater speed than 51 miles per hour. There is testimony in the record which contradicts Ostrum's opinion. Milburn testified that the car was traveling, at the most, 25 miles per hour at the time of the accident and further corroborated appellee's testimony stating that the appellee had decreased his speed when he started down the grade on Main Street. A witness, Harriet Reel, called on behalf of the appellee, testified that she was driving her car down Main Street in front of appellee's vehicle immediately before the accident occurred at a speed of 30-35 miles per hour and that she was traveling faster than the appellee.

After the jury brought in a verdict for the appellants, the court granted a judgment n.o.v. for the appellee on the ground that the deceased as a matter of law had been contributorily negligent, stating:

> "But the real heart of this case is whether or not under the uncontradicted evidence, Mr. Lewis was guilty of negligence as a matter of law. After a very careful review of all the cases cited by Defendant, my conclusion is in the affirmative.
>
> * * *
>
> "It seems conclusive that Mr. Lewis left a place of safety for a position of danger without looking for ap-

proaching traffic. He either failed to look at all, or he looked and saw the Defendant coming and tried to beat him across. The Hammond car was traveling in its proper east bound lane of traffic. There is no evidence other than the headlights were burning. Presuming Mr. Lewis alighted from his car and started across the street toward his home, he could not have taken more than three steps before being struck. If he had looked, he must have seen a car only a few feet to the west of him, as there were no obstructions or reasons that existed to prevent him from seeing. The other theory that he was walking from his home to his car would necessitate a travel distance of about twenty-five feet. Again, if Mr. Lewis had looked, he must have seen lights. An attempt to cross in the face of approaching headlights was contributory negligence. The Plaintiff argues that it could be presumed that Lewis looked and felt he had sufficient time to get across, but the speed of the car was accelerated and he was trapped. It is very hard to judge the speed of a car on a misty dark night, almost five hundred feet distant. The law does not deal in preciseness of calculations and niceties of timing. A pedestrian must conform himself to vehicular traffic and he must first look and then after looking, not rashly venture into obvious peril."

The issue presented to this Court is whether, in view of the facts, the deceased was guilty of contributory negligence as a matter of law.

Article 66½, § 236, Code (1957) provides:

"(a) *In general.*—All pedestrians shall have the right-of-way at street crossings in the *towns and cities* of this State, except where traffic is controlled at such crossings by traffic officers, or traffic-control devices. Between street crossings in such towns and cities, vehicles shall have the right-of-way." (Emphasis supplied.)

Appellant contends that § 236(a) is not applicable to this case because "there is no intersecting street west of the accident site

on Main Street, either inside or outside the corporate boundary." Trooper Stickler testified that the collision occurred approximately 300 feet west of the intersection of Potomac and Main Streets and approximately 400 to 500 feet east of a school crossing. There is also testimony that west of the accident scene Main Street is intersected by an alley; the distance between the two is not found in the record.

Section 2(a) (9) of Art. 66½ defines a crosswalk in the following terms:

"Crosswalk. Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other marking on the surface or that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections."

*Arguendo*, if the school crossing be construed as a crosswalk, then the accident occurred "between crossings" thus making § 236 (a) applicable and the appellee's vehicle would have had the right-of-way. A pedestrian who crosses a thoroughfare in violation of § 236(a) is not *prima facie* guilty of negligence, nor does it make the pedestrian presumptively negligent; it is but a circumstance to be considered along with all other relevant facts in the case on the question of the pedestrian's negligence, or in this case, contributory negligence. *Boyd, Adm'r v. Simpler*, 222 Md. 126, 158 A. 2d 666 (1960).

However, it is not incumbent upon the Court to determine the status of the school crossing in this case for the reason that if we adopt the theory that § 236(a) is not applicable and that, as was stated by this Court in *Heffner v. Admiral Taxi Service*, 196 Md. 465, 77 A. 2d 127 (1950), at p. 470: "In the absence of statutory regulation, the rights of motorists and pedestrians on public highways are reciprocal;" *Flohr v. Coleman*, 245 Md. 254, 264-65, 225 A. 2d 868, 873-74 (1967) ; *Cocco v. Lissau*, 202 Md. 196, 200, 95 A. 2d 857, 859 (1953) ; we must still find for the appellee.

We say this, because assuming the primary negligence of the defendant to have been established, we find that the decedent in exercising his reciprocal rights on the highway as a pedestrian, in relation to an on-coming vehicle, failed to act as a

reasonable and prudent man would have acted under like and similar circumstances. *Jackson v. Yellow Cab Company*, 222 Md. 367, 160 A. 2d 612 (1960) and *Domeski v. Atlantic Refining Co.*, 202 Md. 562, 97 A. 2d 313 (1953). *Cf. Henry Witriol v. Max Pfueller and Aaron C. Cassell*, 247 Md. 177, 230 A. 2d 346 (1967).

We think the law as stated in *Domeski v. Atlantic Refining Co., supra*, is apposite to the case at bar. In *Domeski* the Court was presented with a factual situation wherein the pedestrian was struck by a truck while pushing a motorcycle across Old Annapolis Road, crossing about 8 feet south of an intersection, although this was not a case of a pedestrian crossing between intersections. Also, although the pedestrian was pushing a motorcycle this did not alter his status as a pedestrian, the court stating at p. 567: "Actually the plaintiff in this case was a pedestrian after he got off his motorcycle and decided to cross from the west to the east side of the highway." The Court, in discussing the question of liability, said at p. 567:

> "It was stipulated that the distance on Old Annapolis Road from Arbutus Avenue to the top of the hill south of Arbutus Avenue is about 694 feet. On top of the hill the road is level for about 160 feet. Thus the range of vision from Arbutus Avenue to the south is about 845 feet. The plaintiff attempted to cross the road about 7 or 8 feet south of the intersection. Hence his range of vision was nearly 850 feet. *It is evident that the plaintiff, by the use of ordinary care, could have avoided the accident. The unavoidable conclusion, therefore, is that he was guilty of contributory negligence as a matter of law.*" (Emphasis supplied.)

In the case at bar it is uncontroverted that looking westward from the point of impact there is unhampered visibility along Main Street for at least 400 feet and, as pointed out by Chief Judge McLaughlin in his memorandum opinion, there was no evidence but that the headlights on the appellee's car were illuminated, it was dark and a light rain was falling. Thus had the decedent looked westward before crossing Main Street he would have seen appellee's car approaching, the record re-

vealing nothing that would have obscured his vision. Under these facts reasonable minds could reach but one result—that the decedent failed to exercise the care and judgment of a reasonable and prudent man in regard to his own safety.

Appellant argued that the case at bar, "as regards the nature of the street," is apposite to the facts presented in *Boyd Adm'r v. Simpler, supra,* where this Court held that a pedestrian, who was struck by an automobile between crosswalks, was not guilty of contributory negligence as a matter of law. It is true that in *Boyd, supra,* we said at p. 131 : "It will be immediately noted that we are not dealing with the usual 'pedestrian crossing between intersections' case." However, the statement was made in the following context. The pedestrian was talking to a friend, while standing in the thoroughfare next to a parked car, when a car driven at excessive speed by an intoxicated driver having no operator's permit suddenly rounded a bend and bore down upon her. The evidence showed, that faced with the emergency, she ran toward the opposite (east) side of the road—a place of apparent safety. She had reached a point on the east side of the roadway where, according to a witness, "if she had made another step she would have been off the hard-surface part of the road," when the driver "struck a puddle of water at high speed and skidded or swerved to his left," fatally injuring the pedestrian. We think that the distinction between *Boyd* and the instant case is self-evident, as was said in *Boyd, supra,* at p. 132 :

> "The above does not describe a situation where the pedestrian was disputing a motorist's right of way; Mrs. Boyd was unquestionably using every means at her command to accord the motorist the right of way, irrespective of whether she or the defendant had it at the point of collision."

In the case at bar, counsel for the appellant made a very able argument to the effect that an inference could be drawn from the evidence that the appellee had substantially accelerated the speed of his vehicle from the time that the deceased would normally have seen the approaching vehicle and the time of impact; that it could be presumed that the decedent thought that

he had sufficient time to cross the street, but because of the acceleration of the speed of the appellee's car, he was trapped. Unfortunately, this argument projects us into the realm of speculation, particularly with regard to the actions and intent of the decedent.

Having found the decedent contributorily negligent as a matter of law there is no need to discuss the issues raised by the appellee in his cross-appeal.

*Judgment affirmed with costs.*