## LUIGI VAGNONI ET AL. *v.* DONALD LARRY SHENKLE

[No. 627, September Term, 1970.]

*Decided August 4, 1971.*

The cause was argued before ORTH, ANDERSON and POWERS, JJ.

*Jack H. Olender* for appellants.

*William A. Ehrmantraut,* with whom were *Donahue & Ehrmantraut* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

A family cookout, interrupted by a sudden shower, was a cause (not proximate) of serious injuries sus-

tained by Luigi Vagnoni on the afternoon of Labor Day, 1968. He and his family had joined a group of relatives at the home of his brother on West Park Drive, near University Boulevard, in Prince George's County. A cook-out was in progress in the back yard when a sudden storm came up. Some of the participants took care of the cooking equipment, and others, including Mr. Vagnoni and his son, ran to close the windows on several cars parked on both sides of the street. Mr. Vagnoni directed his son to his own car, on the near side of the street, and he headed for his brother-in-law's car, parked at the curb on the opposite side. While in the street, he was hit and injured by a car driven by Donald Larry Shenkle.[1] The trial court ruled, and we agree, that his own negligence was a proximate cause of his injury.

Luigi Vagnoni and his wife Donatina sued Shenkle in the Circuit Court for Prince George's County. The case was tried before a jury, with Judge William B. Bowie presiding. At the close of the plaintiffs' evidence, Judge Bowie granted a directed verdict for the defendant.

In this appeal from the judgment entered on that verdict, appellants ask us to consider five questions:

1. Whether appellant was contributorily negligent as a matter of law.

2. Whether the facts presented a jury question as to whether appellee's car was operated on the wrong side of the road.

3. Whether operating a motor vehicle on the wrong side of the road can constitute negligence.

4. Whether the crosswalk statute applies where there are no crosswalks in the neighborhood.

5. Whether a pedestrian crossing between crosswalks is contributorily negligent as a matter of law.

Questions 2 and 3 are not before us. Judge Bowie found it unnecessary to decide whether there was evidence of

---

1. It was brought out at trial that Shenkle's middle name was Harry, not Larry. The correction was authorized, but was not physically made.

primary negligence by the appellee, and we think his conclusion was correct.

Questions 4 and 5 merely present aspects of whether appellant was contributorily negligent as a matter of law, and we shall consider that single question.

The area was not an incorporated town, but was "a development, a subdivision". Houses were located on one side of West Park Drive; on the other side was Northwest Branch Park. About 200 feet north of the scene was University Boulevard. Chapman Road was the next street to the south, at a little greater distance. West Park Drive was 35 feet wide, from curb to curb, and cars were parked on both sides. There was room for traffic in both directions, but it would be a "fairly tight squeeze".

Appellant and others hurried toward the street. Appellant said he was running. He also described his gait as not running a race, but loping, or trotting — a 40 or 45 year old man's run. Without stopping, he changed direction to head for a car across the street. He testified that while he was on the grass strip between the sidewalk and the curb on the near side he looked in both directions, could see to the corner at University Boulevard and saw no cars coming. He made this observation while in motion. He continued across the rest of the grass strip, off the curb, between two parked cars, and into the travelled portion of the street, and had progressed two-thirds of the way across when he heard a skidding noise. He then looked to his left for the second time and saw the appellee's car bearing down on him. He had not looked in that direction since he was on the grass plot. He did not see appellee's car until he looked up after hearing the skidding noise. He tried to get out of the way by trying to proceed across the street. Appellant introduced evidence that the damage to appellee's car was to the left headlight ring, which cost about $5.25 to replace.

There was some corroboration of parts of appellant's testimony, and no contradiction. In any event, we accept all of it as true for the purpose of determining if it raised

any issue of fact upon which reasonable minds could differ.

Although not incorporated, the community was a "closely populated place of substantial size", rather than rural or sparsely populated, and was a "town" within the meaning of § 236 (a)[2] of Code Article 66½. *MacKenzie v. Reesey*, 235 Md. 381, 385, 201 A. 2d 848. That statute provided that "Between street crossings in such towns and cities, vehicles shall have the right-of-way". This does not mean that a pedestrian has no right to cross a street between intersections, and his doing so, standing alone, is not enough to hold him contributorily negligent as a matter of law, *Lewis v. Hammond*, 247 Md. 297, 231 A. 2d 32; *Nizer v. Phelps*, 252 Md. 185, 249 A. 2d 112. However, he must use the greatest care for his own protection, *Knisley v. Keller*, 11 Md. App. 269, 271, 273 A. 2d 624, and as the Court of Appeals said in *Henderson v. Brown*, 214 Md. 463, 468, 135 A. 2d 881:

> "* * * the law requires him to know that he must accommodate himself to vehicles on the road, that he cannot dispute their right-of-way but must cross only as the traffic affords safe opportunity."

In the picture of the accident as portrayed by the appellant himself, his crossing of the street was not a fact standing alone. His description of the weather, his haste, his purpose and center of attention, and of the last point from which he looked, spell contributory negligence too clearly for reasonable minds to differ. In *U. S. F. & G. Co. v. Royer*, 230 Md. 50, 185 A. 2d 341, the Court of Appeals referred to cases holding that "whenever a motor vehicle has the right of way, it is negligence as a matter of law for a pedestrian to leave a place of safety for a position of danger without looking for approaching traffic". See also *Van v. McPartland*, 242 Md. 543, 219 A. 2d 815, and cases cited and discussed there.

---

2. Now covered by § 11-503.

The critical point at which appellant left a place of safety and entered a place of potential danger was reached when he completed passing between the parked cars on the near side of the street, and was about to enter the travelled portion of the street. His highest duty to look arose at that point. He did not look then, nor until the accident was imminent, perhaps inevitable. It was then too late.

In granting the motion of appellee for a directed verdict, Judge Bowie said:

> "He reached the grass strip and he looked both ways, and both he and the young lady, Sandra Parker, said he looked at the grass strip. But he didn't look again after that until just prior to the time he was struck. It is certainly obvious that he never did see the car which was obviously there.
>
> The point of extreme danger, as the Court has pointed out in argument here or in hearing the argument on the motion, was the far side of the car parked on the near side of the curb. That is, that part of the car closest to the travel portion of the street. Certainly, had he used the proper precaution and had he not felt this was an emergency to put the windows up on the car, I am sure he would have seen it. Under the circumstances, what he did was, having looked at the grass plot, he then went right ahead into the street in front of the path of this oncoming car. There isn't any question about it. We feel reasonable minds could not differ on that."

We agree with his reasoning and with the result.

*Judgment affirmed.*
*Appellants to pay costs.*