## PHILLIP BAXTER WHITT *v.* PHILIP A. DYNAN ET AL.

[No. 256, September Term, 1973.]

*Decided February 13, 1974.*

The cause was argued before MOYLAN, MENCHINE and DAVIDSON, JJ.

*Clarence E. Pusey, Jr.,* and *Shirley J. Stanton* for appellant.

*W. Lee Harrison,* with whom were *G. Mitchell Austin* and *Cooper C. Graham* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

On 24 February 1972 an automobile struck and killed a pedestrian, Joseph Lee Dynan, aged 20. His parents, Philip and Rosnell Dynan, and his father as personal representative of his estate sued Phillip Baxter Whitt, the driver of the automobile, for damages. At the trial in the Circuit Court for Baltimore County, Judge Walter R. Haile denied Whitt's motion for a directed verdict. A jury returned verdicts totalling $12,000 in favor of the parents and estate of the deceased. Whitt's subsequent motion for judgment n.o.v. or a new trial was also denied. This appeal followed.

Most of the relevant facts in this case are not in dispute. Any discrepancies have been resolved in favor of the appellees.[1] York Road, also known as Maryland Route 45, runs north and south through Baltimore County. The

---

1. In deciding whether a motion for directed verdict was properly denied, we must consider the evidence, together with all reasonable and legitimate inferences which may be deduced therefrom, in the light most favorable to the party against whom the motion was directed. Mike v. Service Review, Inc., 19 Md. App. 287, 298-99, 310 A. 2d 585, 592 (1973); Pratt v. Coleman, 14 Md. App. 76, 78, 286 A. 2d 209, 210-11 (1972); Mazer v. Stedding, 10 Md. App. 505, 506-07, 271 A. 2d 381, 381-82 (1970).

accident occurred in a residential area on the east side of York Road south of its intersection with Padonia Road, an intersection at which traffic is governed by a traffic signal. The Padonia Village Shopping Center is located in the southeast quadrant of that intersection. An entrance to the shopping center is located on the east side of York Road about 200 feet north of the site of the accident. About 62 feet north of the site of the accident Harding Street intersects the west side of York Road. Traffic at this "T" intersection is controlled by a stop sign located on Harding Street. Between the site of the accident and Padonia Road there are no public streets which intersect the east side of York Road, nor is there evidence of any streets intersecting the east side of York Road south of the accident site.

At the site of the accident York Road has a paved width of 44 feet. The pavement is divided by a double yellow line which separates the northbound from the southbound traffic. On each side of that line there is a twelve-foot lane, one for traffic moving north and one for traffic moving south. Adjoining each of these twelve-foot lanes there is a ten-foot-wide paved shoulder. While there is a small crack that separates the ten-foot-wide paved shoulder from the twelve-foot-wide traffic lane on the east side of York Road, there are no broken white lines or other lane markings dividing the northbound lane from the northbound paved shoulder. The paved shoulder on the east side of York Road is generally used by motor vehicles for the purpose of making right-hand turns. The speed limit on York Road at this location is 40 miles per hour.

At the edge of the northbound paved shoulder there is a slight downgrade. Thereafter the terrain levels off. The houses along the east side of York Road are set back a considerable distance from the road, although the mail boxes serving these houses are located in close proximity to the edge of the northbound paved shoulder. There are some large trees along the road. There are no sidewalks on the east side of York Road in this area.

On the night of the accident the deceased, a boy of slender build, was living by himself in an apartment within a house

located on the east side of York Road "about two blocks south of where the accident took place." At about 7 p.m. he decided to cash his paycheck at a Drug Fair located in the Padonia Village Shopping Center. When he reached a point approximately 62 feet south of Harding Street he was walking north approximately four or five inches from the edge of the paved shoulder on the east side of York Road. The unpaved downhill slope adjoining the paved shoulder on which he was walking was "slushy and muddy," and there was snow on the level land immediately adjoining it on the east. The deceased was dressed in dark clothing. It was "on its way to getting dark" and there was no artificial illumination at that location.

Appellant Whitt was on his way home from work when the accident occurred. He lived between a quarter and a half of a mile north of the accident site and was familiar with the road, on which he traveled every day to and from work. Just before the accident he was driving at a speed of approximately 40 miles an hour in the northbound 12-foot lane of York Road in a two-door 1970 Ford approximately $6^1/_2$ feet wide and there were cars behind him. Southbound traffic was heavy. He was approximately three car lengths behind a small compact car driven and owned by Mr. Richard C. Philipp. His headlights were on low beam, his windshield was unobstructed, and he had no problems with his vision. The car ahead of him slowed down somewhat. In order to go into the shopping center Whitt pulled over onto the northbound paved shoulder at a steady speed of 40 miles an hour. Just as the front of his car pulled ahead of Philipp's car he struck the deceased, whose body was thrown about 42 feet to the northeast and came to rest on the unpaved downgrade immediately at the edge of the northbound paved shoulder. Whitt testified that he did not see the boy before he struck him. The boy was taken to the hospital where he died. The right side of the windshield of appellant's car was broken and the right fender and radio antenna were damaged.

Richard C. Philipp and his wife, Linda Anne, were in the small compact car Whitt was passing when the accident

occurred. Mr. Philipp, who was driving, testified that his car was going 35 to 40 miles an hour until he began to slow down to stop for the red light at Padonia Road. Whitt had been traveling behind him for some distance, and he moved over to the paved shoulder on the right when Philipp slowed down. As Whitt's car was traveling alongside of his, separated by approximately three feet, he saw the deceased walking on the paved shoulder about four or five inches from its edge. Philipp speculated that the deceased was probably "going in between the mailboxes" and opined that there was no other place for a pedestrian to walk. When first observed, the boy was about 100 feet in front of him. Philipp testified that he had no difficulty in seeing the boy, and noticed him because he saw both the white portions of the bottom of his tennis shoes and the reflection from metal studs attached to the side seams of his dungarees. Philipp realized that "either the boy was going to jump out of the way or get hit and I knew he couldn't even see the car coming from behind him." He applied his brakes, swerved to the left and moved as close to the center line as he could. He then saw appellant's vehicle strike the boy. According to Philipp, the deceased boy did not look to his rear to observe approaching vehicles.

Mrs. Linda Anne Philipp testified that at the time of the accident she was a passenger in her husband's car. She first saw the boy walking on the edge of the paved northbound shoulder with his back to the traffic when he was approximately 150 feet ahead of her and before Whitt's vehicle started to move to the right, and continued to observe both him and the Whitt car until he was struck. She stated that neither the Whitt vehicle nor the boy altered their course at any time. Moreover, the deceased never turned around nor glanced to his rear.

Appellant contends that his motion for a judgment n.o.v. should have been granted. He maintains that Code (1957), Art. 66½, § 11-506 (b) prohibits a pedestrian from walking along a highway except on the left side facing oncoming traffic. He asserts that the decedent was contributorily negligent as a matter of law because the evidence establishes

that the deceased was walking along the right side of the road with his back toward the approaching traffic. Appellees contend that the statute requires a pedestrian to walk on the left side of the road facing traffic only when it is practicable to do so. They insist that the evidence shows that in order to comply with the statute the deceased would have had to cross York Road against heavy traffic without benefit of a crosswalk or traffic light at a time when visibility was poor. They conclude that the question of whether noncompliance with the statute was justified under these circumstances was properly submitted to the jury. Neither of these positions is entirely correct.

Code (1957) as amended,[2] Art. 66½, § 11-506 provides:

"(a) *Where sidewalks provided.* — Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.

"(b) *Where sidewalks not provided.* — Where sidewalks are not provided, any pedestrian walking along and upon a highway shall walk only on the left shoulder, when practicable, or on the left side of the roadway as near as practicable to the edge of the roadway facing traffic which may approach from the opposite direction."

The effect of this statute as a penal provision is clear.[3] Its words are plain and unambiguous.[4] We are persuaded from

---

**2.** 1970 Laws of Maryland, ch. 534, § 1, effective 1 January 1971.

**3.** Code (1957), Art. 66½, Subtitle 11 is entitled "Rules of the Road." § 11-102 provides:

"It is unlawful and, unless otherwise declared in this subtitle with respect to particular offenses, it is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this subtitle."

**4.** The cardinal rule of statutory construction is that statutes should always be construed to effectuate the intention of the legislature. Silberman v. Jacobs, 259 Md. 1, 24, 267 A. 2d 209, 221 (1970); Unsatisfied Fund v. Bowman, 249 Md. 705, 708, 241 A. 2d 714, 716 (1968); Md. Medical Service v. Carver, 238 Md. 466, 478, 209 A. 2d 582, 588 (1965); Pressman v. Barnes, 209 Md. 544, 558, 121 A. 2d 816, 823 (1956). Legislative intent is to

a reading of the statute that where sidewalks are not provided pedestrians are required to walk either on the left shoulder or the edge of the left side of the roadway facing oncoming traffic. A pedestrian's failure to exercise one of these two options constitutes a misdemeanor. To this extent appellees' contention is not correct.

However, the effect of this penal statute in a civil tort action has not previously been decided by the appellate courts of Maryland.[5] We are not convinced that a pedestrian's violation of this mandatory rule of the road should be regarded as contributory negligence as a matter of law.

The Court of Appeals of Maryland in considering the effect of violations of penal statutes, including the rules of the road, has generally followed the rule that if a violation of a penal statute is the proximate cause of an injury, such a violation does not constitute "negligence per se" but is merely "evidence of negligence" for the jury. *Kelly v. Huber Baking Co.*, 145 Md. 321, 335-36, 125 A. 782, 788 (1924); *New Amsterdam Casualty Co. v. Novick Transfer Co.*, 274 F. 2d 916, 923 (4th Cir. 1960).[6] The distinction between mere

---

be sought in the first instance in the words used in the statute, and the words used are conclusively presumed to embody the meaning of the legislature if there is no ambiguity or obscurity in the statute. Department v. Greyhound, 247 Md. 662, 668-69, 234 A. 2d 255, 258 (1967); Amalgamated Ins. v. Helms, 239 Md. 529, 535, 212 A. 2d 311, 316 (1965); Pineland Lumber Co. v. Miles, 228 Md. 584, 587-88, 180 A. 2d 870, 872 (1962).

**5.** The courts of many other states have determined the effect of similar penal statutes in tort actions. *See* Anno., *Pedestrians on Highway — Breach of Statute*, 45 A.L.R.3d 658 (1972); *Uniform Vehicle Code Annotated*, § 11-506.

**6.** Norris v. Wolfensberger, 248 Md. 635, 640-41, 237 A. 2d 757, 761 (1968) (violation of statutory duty to turn left from extreme left lane is not negligence per se and does not "compel a finding of an irrebuttable presumption of negligence or even negligence, though it may, if the violation was the proximate cause of the accident, create a prima facie case of negligence") (citations omitted); Miller v. Mullenix, 227 Md. 229, 232-33, 176 A. 2d 203, 204 (1961) (violation of statutory duties not to pass within 100 feet of intersection and not to cross double white line is not negligence per se, but is prima facie evidence of negligence where the violation directly and proximately causes a collision); Sun Cab Company, Inc. v. Cusick, 209 Md. 354, 360-61, 121 A. 2d 188, 191 (1956) and Cocco v. Lissau, 202 Md. 196, 199, 95 A. 2d 857, 858 (1953) (one who violates statutory duty to drive on right side of road is "*prima facie* guilty of neglegence where the violation directly and proximately causes a collision"); Brown v. Bendix Aviation Corp., 187 Md. 613, 619, 51 A. 2d 292, 294 (1947) (violation of statutory duty to yield right-of-way to pedestrian is "at least some evidence of negligence"); State

"evidence of negligence" and "negligence per se" was explained in *Kelly, supra,* where the Court of Appeals, quoting from *Huddy on Automobiles,* said:

> " 'The distinction between mere "evidence of negligence" and "negligence *per se*" is very marked, in that in the former there must be an adjudication as to whether or not the violation constitutes negligence, whereas in the latter negligence necessarily follows the proof of the violation. . . . Hence the violation is generally said to be *prima facie* negligence, and the violator of the rule is given an opportunity to rebut the inference of negligence arising against him.' "

Thus, in Maryland, when a claim of liability for negligence or a defense of contributory negligence is founded upon a violation of a penal statute, the jury generally must determine both whether the violation constitutes negligence and, if so, whether the violation is the proximate cause of the accident. In this case we must determine whether there is any cause to depart from this general rule.

In order to ascertain the effect of § 11-506(b), it is

---

v. Hecht Company, 165 Md. 415, 420, 169 A. 311, 313 (1933) (failure to observe ordinance in regard to safety locks on elevator is prima facie evidence of negligence if it is proximate cause of injury); Chiswell v. Nichols, 137 Md. 291, 307, 112 A. 363, 368 (1920) (violation of statutory duties to keep to right of center of road while making left turn and to slow down when approaching intersection not conclusive proof of negligence; jury must consider facts and circumstances surrounding violation).

The same rule has sometimes been expressed as follows:

> "It is the settled law in Maryland that the mere violation of a statute does not of itself support an action for damages. However, it is also well settled that where such a violation is the proximate cause of an injury a right of action does accrue to the party injured."

Gosnell v. B. & O. R.R. Co., 189 Md. 677, 687, 57 A. 2d 322, 327 (1948); Transit Company v. Metz, 158 Md. 424, 438, 149 A. 4, 10 (1930); Hopper, McGaw & Co. v. Kelly, 145 Md. 161, 169, 125 A. 779, 781 (1924).

This statement does not imply that if a violation of law is the proximate cause of an injury the plaintiff would recover without regard to whether the jury believed the violation constituted negligence. It simply reaffirms the general rule that the plaintiff must establish both the violation and its proximate cause relationship to the injury before the case is submitted to the jury.

necessary to examine the legal relationships between pedestrians and motorists prior to its enactment. Prior to 1970, within towns and cities, the statute created "favored zones" which gave motorists the right-of-way between intersections and pedestrians the right-of-way at crosswalks. *Belleson v. Klohr*, 257 Md. 642, 646, 264 A. 2d 274, 276 (1970).[7] In each instance, both the motorist and the pedestrian had the duty to use reasonable care and diligence to avoid injuring anyone regardless of who had the right-of-way. However, whoever lacked the privilege conferred by the right-of-way had a greater share of responsibility. Thus at street crossings a greater degree of care was required of motorists, and between crossings a greater degree of care was required of pedestrians. *Thursby v. O'Rourke*, 180 Md. 223, 230-31, 23 A. 2d 656, 660 (1942).

When a pedestrian in an urban area crossed between intersections he had a right to be on the highway, but he was required to "use the greatest care for his protection." The pedestrian could not dispute the motorist's right-of-way and therefore had to accommodate himself to any vehicle on the road. He had to look for approaching vehicles and cross only as traffic afforded a safe opportunity. Because he had a duty to yield, his failure to look for or see approaching motor vehicles was inexcusable. In recognition of these principles, courts generally held that the failure of a pedestrian crossing a street within an urban area to look for or see approaching traffic was negligence as a matter of law.[8]

---

7. Prior to the 1970 revision, Art. 66½, § 236 (a) provided:

"All pedestrians shall have the right-of-way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers, or traffic control devices. Between street crossings in such towns and cities, vehicles shall have the right-of-way." Code (1957), Art. 66½, § 236 (1967 Replacement Vol.).

A right-of-way was defined as "the privilege of the immediate use of the highway." Code (1957), Art. 66½, § 2 (a) (46) (1967 Replacement Vol.).

8. *See, e.g.*, Van v. McPartland, 242 Md. 543, 550-53, 219 A. 2d 815, 818-20 (1966); U. S. F. & G. Co. v. Royer, 230 Md. 50, 54-55, 185 A. 2d 341, 343 (1962); Love v. State, Use of Nelson, 217 Md. 290, 297, 142 A. 2d 590, 594 (1958); Henderson v. Brown, 214 Md. 463, 470-72, 135 A. 2d 881, 884 (1957); Billmeyer v. State, Use of Whiteman, 192 Md. 419, 426, 64 A. 2d 755, 758 (1949); McGarrey v. Duffy, 175 Md. 634, 638, 3 A. 2d 458, 459-60 (1939);

Before 1970 no statute governed the use of streets and highways by pedestrians outside of municipal limits, and the common law doctrine of reciprocal rights was held to apply. This doctrine, "based on the realization that outside of towns and cities the scarcity of sidewalks makes reasonable the use by pedestrians of the roadway itself," *Belleson v. Klohr, supra,* 257 Md. at 646, 264 A. 2d at 276, was expressed as follows:

> "The public roads are for the general use of all members of the public, and the rights of one operating a vehicle and of a pedestrian on a public highway are mutual, reciprocal, and equal. Neither may use it in disregard of the right of the other to use it. Each must accommodate his movements to the other's lawful use of it, and each must anticipate the other's possible presence." *Flohr v. Coleman,* 245 Md. 254, 265, 225 A. 2d 868, 874 (1967).

Under this doctrine the pedestrian had the right to travel anywhere upon the highway. He was free of negligence whether he walked on the left or right side of the road, either facing or with his back to the traffic. The motorist, of course, had an equal right to the highway. Both had the duty to use reasonable care and diligence to avoid injuring anyone or being injured. However, since neither had a statutorily created right-of-way, and, therefore, a duty to yield, the degree of care required of each was equal under all circumstances.

Thus, when a pedestrian used a highway in the country he

---

Slaysman v. Gerst, 159 Md. 292, 301, 150 A. 728, 732 (1930); Webb-Pepploe v. Cooper, 159 Md. 426, 431-32, 151 A. 235, 237 (1930); Vagnoni v. Shenkle, 12 Md. App. 576, 579-80, 280 A. 2d 42, 44 (1971).

A pedestrian outside a crosswalk has been held not contributorily negligent as a matter of law for failing to look in cases where the motorist was not in a place where the pedestrian should have expected him to be, such as on the wrong side of the road. In these cases the pedestrian was not contesting the motorist's right-of-way, since he was not in a path legally available to the motorist. *See, e.g.,* Richardson v. Rice, 256 Md. 19, 26-27, 259 A. 2d 251, 255-56 (1969); Ebert Ice Cream Co. v. Eaton, 171 Md. 30, 37-38, 187 A. 865, 868-69 (1936); Coplan v. Warner, 158 Md. 463, 466-67, 149 A. 1, 2 (1930).

was not required to use "the greatest care for his protection." Since he was not disputing the motorist's right-of-way by walking along the edge of a highway, his obligation to accommodate himself to vehicles on the road was not greater than but equal to the obligation of the motorist to accommodate himself to the pedestrian. His obligation to look for approaching vehicles was no greater than the motorist's obligation to look for him. Consequently, his failure to look for or see approaching motor vehicles might be excused where it was reasonable for him to assume that under all of the surrounding circumstances the motorist could readily avoid an accident. Thus, under the doctrine of reciprocal rights, the courts have generally held that the question of whether a pedestrian walking along a highway outside of a town or city is negligent for failing to look for approaching traffic is one for the jury.[9]

The Court of Appeals early recognized the artificiality of a distinction between the rights of motorists and pedestrians based upon an arbitrary standard of whether their activities occurred in the city or country, rather than on the relative needs of the motorist to proceed unimpeded and of the

---

9. *E.g.,* Belleson v. Klohr, *supra,* 257 Md. at 653, 264 A. 2d at 280; Hall v. Albertie, 140 Md. 673, 680-82, 118 A. 189, 191-92 (1922); Mears v. McElfish, 139 Md. 81, 84-85, 114 A. 701, 702-03 (1921); *see* Clayborne v. Mueller, 266 Md. 30, 36-37, 291 A. 2d 443, 446 (1972); Porter v. Quarry Co., 161 Md. 34, 35-36, 155 A. 428, 428-29 (1931); Biogini v. Stynen, 124 Md. 369, 373-74, 92 A. 806, 808 (1914).

Under the doctrine of reciprocal rights pedestrians have been held contributorily negligent as a matter of law in two sets of circumstances. This result is reached *"where a pedestrian suddenly steps into the path of an approaching car,* and he either does not look to see if any car is approaching or makes no effort to avoid it by stopping or stepping aside, although he could easily have seen it in time to have kept or taken a position of safety . . ." Domeski v. Atlantic Refining Co., 202 Md. 562, 567, 97 A. 2d 313, 316 (1953) (emphasis supplied); *see* Reid v. Pegg, 256 Md. 289, 296-97, 260 A. 2d 38, 42-43 (1969); Lewis v. Hammond, 247 Md. 297, 302-04, 231 A. 2d 32, 35-36 (1967); Vokroy, Adm'r v. Johnson, 233 Md. 269, 273-74, 196 A. 2d 451, 453 (1964). The same result is reached when a pedestrian's continued stationary presence on the highway is unreasonable under all the circumstances. Greer v. King, 247 Md. 577, 580-81, 233 A. 2d 775, 777 (1967); Myerberg v. Thomas, 13 Md. App. 539, 545, 284 A. 2d 29, 32 (1971). In such cases it does not matter whether the pedestrian looked or failed to look for oncoming traffic. It is his failure to move to a place of safety which constitutes negligence as a matter of law. This result is not reached where a pedestrian is doing nothing other than walking along a highway in a place where no sidewalks are available.

pedestrian to utilize the highway. In *Mahan v. State*, 172 Md. 373, 384, 191 A. 575, 580-81 (1937), a pedestrian who resided in a home located on the west side of a street in Havre de Grace was injured while walking along the street's shoulder. It was noted that there was no sidewalk for the use of persons occupying the properties abutting the west side of the street so that of necessity they were required to use the vehicular part of the highway itself. The court reasoned that the absence of sidewalks indicated that the street was a rural or suburban rather than a city street and that the conditions incident to its use resembled those of a rural highway rather than a city street. The court held that the doctrine of reciprocal rights, rather than the right-of-way rules applied. By so doing the court established that where sidewalks are not available, whether in the city or the country, a pedestrian's need to travel is of sufficient import to counterbalance a motorist's right to travel unimpeded.

In 1970 the legislature enacted a complete revision of Code (1957), Art. 66¹/₂, in which §§ 11-502, 11-503 and 11-506 (b) substantially changed the law relating to the use of streets and highways by pedestrians.[10] *Belleson v. Klohr, supra*, 257 Md. at 653 n. 1, 264 A. 2d at 280 n. 1. In enacting §§ 11-502 and 11-503 of the revised Art. 66¹/₂ the legislature abolished the urban-rural distinction which had previously existed with relation to the rights-of-way of pedestrians and motorists.[11] Instead it established a uniform rule, based

---

10. 1970 Laws of Maryland, ch. 534, effective 1 January 1971.

11. Code (1957), Art. 66¹/₂, § 11-502 (a) states in relevant part:

"When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way ... to a pedestrian crossing the roadway within a crosswalk...."

Code (1957, Art. 66¹/₂, § 11-503 (a) states:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

"Right-of-way" under the 1970 revision is defined in Code (1957), Art. 66¹/₂, § 1-175 as follows:

"Right-of-way means the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian."

upon a balancing of the relative needs of the pedestrian and the motorist to utilize a highway. It enhanced the pedestrian's right to utilize the highway for crossing purposes by affording him a right-of-way at crosswalks and unmarked crosswalks at intersections in the country as well as the city. It diminished the motorist's previous right-of-way between intersections in the city vis-a-vis pedestrians crossing or walking along the edge of a roadway by limiting it only to those instances in which a pedestrian was crossing the street. Finally, recognizing as had the Court of Appeals in *Mahan, supra*, that there is a legitimate need in both the city and the country for a pedestrian to be able to walk along the highway where there are no sidewalks, the legislature explicitly provided for the first time, in § 11-506 (b), that where no sidewalks exist, whether in the city or the country, pedestrians are entitled to walk on the left side of the highway facing oncoming traffic. Significantly, the legislature did not impose a duty to yield the right-of-way upon a pedestrian exercising this right. We therefore believe that in enacting § 11-506 (b), the legislature established a zone, limited to the edge of those highways where no sidewalks exist, in which neither the pedestrian nor the motorist has a right-of-way and in which their interrelationship is governed by the doctrine of reciprocal rights.[12]

A literal reading of § 11-506 (b) implies that a reciprocal rights zone is created only when a pedestrian is walking on the left side of the road facing traffic, and that when a pedestrian walks on the right side of the road with his back to the traffic, the right-of-way rules apply. In our view such a reading does not comport with the purposes of the act.[13]

---

12. "[I]t is not to be presumed that the legislature intended to make any innovation in the common law, further than the case absolutely required. The law rather infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced." Hooper v. Baltimore, 12 Md. 464, 475 (1859); *see* M. & C. C. v. Balto. Gas Co., 232 Md. 123, 135, 192 A. 2d 87, 93 (1963); Lutz v. State, 167 Md. 12, 15, 172 A. 354, 355-56 (1934); State v. Gibson, 4 Md. App. 236, 247, 242 A. 2d 575, 582 (1968), *aff'd*, 254 Md. 399, 254 A. 2d 691 (1969).

13. In statutory construction, the court "must consider not only the literal meaning of the words used but also their meaning and effect considered in the light of the purposes and objectives of the enactment,

The requirement that a pedestrian walk along the left side of the highway facing traffic is not primarily concerned with the relative rights of pedestrians and motorists to utilize the highway. It is not designed to vary the obligation of the motorist toward the pedestrian depending upon the side of the highway on which the pedestrian is walking or the direction in which he is facing. From the fact that in the absence of sidewalks a pedestrian has a right to walk along the left side of the highway, and the fact that when he exercises this right his interrelationship with the motorist is governed by the doctrine of reciprocal rights, it follows that where no sidewalks exist the motorist has at all times a duty to anticipate the presence of pedestrians on his right as well as a duty to avoid striking pedestrians on his right. *The motorist's ability to carry out these duties by looking for pedestrians and avoiding them by moving out of the way is not affected by whether the pedestrian is facing the motorist or has his back to him.*[14] It is unreasonable to read the statute so as to lessen the obligation of the motorist to the pedestrian who has his back toward the traffic by giving the motorist the preference to use the highway and to increase the obligation of the motorist toward the pedestrian who is facing the traffic by removing that preference.

The primary purpose of this requirement is to protect the pedestrian from injury. A pedestrian is required to walk on the left side of the highway facing traffic in order that he may observe approaching vehicles and step out of their path if it appears that they may not turn out of their path to avoid him.[15] He is encouraged, upon pain of criminal

with the legislative intent prevailing over literal intent." Chambers v. State, 6 Md. App. 339, 343, 251 A. 2d 30, 32, *cert. denied,* 255 Md. 740 (1960); *see* State v. Blanken, 11 Md. App. 460, 466-67, 275 A. 2d 179, 183, *cert. denied,* 261 Md. 722 (1971); Clark v. State, 2 Md. App. 756, 761, 237 A. 2d 768, 770, *cert. denied,* 250 Md. 731 (1968), *cert. denied,* 394 U. S. 1001, 89 S. Ct. 1597 (1969).

**14.** *See* Saddler v. Parham, 245 S.W.2d 945, 948 (Ky. 1952); Miller v. Hine, 281 App. Div. 387, 120 N.Y.S.2d 231, 235 (1953).

**15.** This purpose has been found both in states where violation of the statute is evidence of negligence and in those where a violation is negligence as a matter of law. *See, e.g.,* Saddler v. Parham, *supra;* Hillock v. Bailey, 223 A. 2d 426, 429 (Me. 1966); Tedla v. Ellman, 280 N. Y. 124, 131, 19 N.E.2d 982, 991 (1939); Dimick v. Linnell, 402 P. 2d 734, 736 (Ore. 1965); Panzer v. Hesse, 249 Wis. 340, 24 N.W.2d 613, 616 (1946).

penalty, to walk where it is most likely that he will be able to see approaching traffic. It is consistent with this purpose to read the statute as doing nothing more than imposing upon the pedestrian walking along the side of a highway a duty to look for traffic traveling upon the same portion of the highway which he himself is using, a duty already imposed upon him under the common law doctrine of reciprocal rights.

Because in our view the requirement that a pedestrian walk along the left side of the highway facing oncoming traffic was intended primarily to enhance the protection of pedestrians and was not intended to determine the relative rights of pedestrians and motor vehicles to the use of the highways or to alter the rights of drivers and pedestrians with respect to one another, we see no reason to depart from the general rule that a violation of a penal statute does not constitute negligence as a matter of law. Accordingly, we now hold that the effect of a violation of the penal statute contained in Art. $66^{1}/_{2}$, § 11-506 (b) in a tort action is evidence of negligence, but is not negligence as a matter of law.

In the instant case there was evidence from which the jury could find that the decedent was not negligent in walking on the right-hand edge of the paved shoulder with his back to oncoming traffic without looking behind. There was evidence to show that there were no sidewalks in the area; that the ground next to the road was muddy and the ground further to the right was covered with snow; that the deceased was walking as near as practicable to the edge of the paved shoulder of the highway; and that southbound traffic was heavy. In the absence of any evidence to show that there were crosswalks between the decedent's home and the site of the accident, reasonable minds might well conclude that the deceased was not negligent in walking on the right side of the highway. In addition, it was shown that the decedent, while his clothes were dark, had metal studs on his pants and was wearing tennis shoes which were white at the bottom. That they and he were clearly visible to approaching traffic, notwithstanding that it was getting dark, was established by the testimony of two impartial

witnesses who unequivocally stated that they saw him plainly when he was between 100 and 150 feet ahead of their car while they were traveling immediately in front of and then parallel to appellant Whitt at a speed of approximately 35 miles per hour. In addition, there was evidence to show that the paved shoulder upon which the decedent was walking was ten feet wide; that he was of slender build; that he was walking within four or five inches of the far edge of the paved shoulder; and that Whitt's full-sized car was 6¹/₂ feet wide. From the evidence that the decedent was in fact visible and that the width of the paved shoulder, given his position thereon, was more than ample to permit the driver of a full-sized vehicle to pass him without striking him, reasonable minds could conclude that the deceased was not negligent in failing to look behind him as he walked along the right side of the highway. Finally, there was evidence to show not only that the decedent was visible and that an ordinary full-sized car could have safely passed without striking him but also that immediately prior to the accident the car to Whitt's left moved as close to the center line as was possible, leaving open to Whitt's use an additional four to six feet of the 12-foot lane to the left of the paved shoulder and that Whitt had not seen the boy before he struck him. From this evidence, showing that Whitt could have avoided the accident had he been keeping a proper lookout, reasonable minds could conclude that even if the decedent were negligent it was not his negligence which caused his injury. Because reasonable minds can differ on both the questions of whether, under all the circumstances, the deceased was exercising ordinary care in walking along the left side of the highway with his back to oncoming traffic and without looking behind him and whether the deceased's negligence, if any, was a proximate cause of his injury, they were properly submitted to the jury. *Beckner v. Chalkley*, 19 Md. App. 239, 248-49, 310 A. 2d 569, 575 (1973); *Miller v. Michalek*, 13 Md. App. 16, 21, 281 A. 2d 117, 118-20 (1971); *Mazer v. Stedding, supra,* 10 Md. App. at 507, 271 A. 2d at 382. The motion for a directed verdict was properly denied.

*Judgment affirmed.*
*Costs to be paid by appellant.*